1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **I.T.**, **A.K.**, **S.R.**, and **M.G.**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**CHOICEPOINT LLC d/b/a CHOICEPOINT HEALTH**,<br><br>Defendant. | No.  2:25-cv-193<br><br>CLASS ACTION COMPLAINT<br><br>JURY DEMAND |

Plaintiffs I.T., A.K., S.R., and M.G., (collectively, "Plaintiffs"), individually and on behalf of all similarly situated persons, allege the following against ChoicePoint LLC d/b/a ChoicePoint Health ("ChoicePoint" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiffs' counsel and review of public documents as to all other matters:

## I        INTRODUCTION

1.      A person's struggle with alcohol or drug addiction is among the most sensitive, and closely guarded facets of their life.

2.      The unwanted disclosure of such information can be enormously harmful. It can impact an individual's reputation, livelihood, and personal relationships. And, if people struggling with addiction are unable to trust that the organizations purporting to offer assistance

CLASS ACTION COMPLAINT - 1

1    will protect their sensitive, private information, they are much less likely to seek help when they

2    need it most.

3        3.    Unfortunately, unbeknownst to Plaintiffs and other visitors to Defendant's

4    website, Defendant does not keep sensitive information about its visitors private. Instead,

5    Defendant records the fact that its website visitors, like Plaintiffs and Class Members, are seeking

6    help for drug or alcohol addiction, as well as the results of their online addiction evaluation

7    (collectively, "Sensitive Information"), and transmits that information to third parties, including

8    Alphabet, Inc. ("Google") and Meta Platforms, Inc. ("Facebook"), through its use of surreptitious

9    online tracking tools.

10        4.    Online advertising giants, like Google and Facebook, compile as much

11    information as possible about American consumers, including information relating to the most

12    private aspects of their lives, as fuel for their massive, targeted advertising enterprise. Thus, any

13    information about a person captured by those online behemoths can be used to stream ads to that

14    person. If Google or Facebook receives information that a person suffering from an addiction,

15    they will use that information, and allow their clients to use that information, to stream ads to

16    that person's computers and smartphones for products and services related to their addiction.

17        5.    Google and Facebook offer website operators access to their proprietary suites of

18    marketing, advertising, and customer analytics software, including Google Analytics, Google

19    AdSense, Google Tag Manager, Meta Business Suite, and Facebook Ads (collectively, the

20    "Business Tools"). Armed with these Business Tools, website operators can leverage Google and

21    Facebook's enormous database of consumer information for the purposes of deploying targeted

22    advertisements, performing minute analyses of their customer bases, and identifying new market

23    segments that may be exploited.

24

CLASS ACTION COMPLAINT - 2

6.      But, in exchange for access to these Business Tools, website operators install Google and Facebook's surveillance software on their website (the "Tracking Tools"), including 'tracking pixels' ("Pixels") and third-party 'cookies' that capture sensitive, personally identifiable information provided to the website operator by its website users. This sensitive information can include a unique identifier that Google and Facebook use to identify that user, regardless of what computer or phone is used to access the website.  The Tracking Tools can also capture and share other information like the specific webpages visited by a website user, items added to an online shopping cart by a website user, information entered into an online form by a website user, and the device characteristics of a website user's phone or computer.

7.      In essence, when website operators use Google and Facebook's Business Tools, they choose to participate in Google and Facebook's mass surveillance network and, in turn, benefit from Google and Facebook's collection of user data at the expense of their customers' privacy.

8.      ChoicePoint is one of the many companies that has chosen to prioritize its marketing efforts over its customers' privacy, by installing Google and Facebook's Tracking Tools on its website.

9.      ChoicePoint is a medical provider specializing in addiction treatment services, including medication-assisted addiction treatment, psychiatric counseling and in-patient addiction treatment, operating in seventeen states and the District of Columbia.[1]  ChoicePoint's website – www.choicepointhealth.com (the "Website") – allows potential clients to research its

---

[1] *About ChoicePoint*, CHOICEPOINT, https://www.choicepointhealth.com/about-choicepoint-health/ (last visited Nov. 22, 2024).

CLASS ACTION COMPLAINT - 3

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

programs, request an appointment, and complete an online assessment of the severity of their addiction.[2]

10.    Plaintiffs and Class Members visited the Website and had their personal Sensitive Information tracked by Defendant using the Tracking Tools.  However, Defendant **never** obtained authorization from Plaintiffs or Class Members to share their Sensitive Information with third parties. At all times relevant to this action, Plaintiffs and Class Members gave no informed consent for information about their Sensitive Information to be transmitted to the third parties, including the largest advertiser and compiler of user information, or the largest social media company on earth, which has a sordid history of privacy violations in pursuit of ever-increasing advertising revenue.[3]

11.    As a result of Defendant's conduct, Plaintiffs and Class Members have suffered numerous injuries, including: (i) invasion of privacy; (ii) lack of trust in communicating with online service providers; (iii) emotional distress and heightened concerns related to the release of Sensitive Information to third parties, (iv) loss of benefit of the bargain; (v) diminution of value of the Sensitive Information; (vi) statutory damages and (viii) continued and ongoing risk to their Sensitive Information.

12.    Therefore, Plaintiffs seek, on behalf of themselves and a class of similarly situated persons, to remedy these harms and asserts the following statutory and common law claims against Defendant: Invasion of Privacy; Breach of Confidence; Breach of Fiduciary Duty; Negligence; Breach of Implied Contract; Unjust Enrichment; and violations of the Electronic

---

[2] *Id*.

[3] This Court will not have to look far to find evidence of Meta's violations of privacy laws. Just in May of this year the European Union fined Meta "a record-breaking" $1.3 billion for violating EU privacy laws. *See* Hanna Ziady, *Meta slapped with record $1.3 billion EU fine over data privacy*, https://www.cnn.com/2023/05/22/tech/meta-facebook-data-privacy-eu-fine/index.html (last visited Nov. 22, 2024).

CLASS ACTION COMPLAINT - 4

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Communications Privacy Act, Ohio Consumer Sales Practices Act, Indiana Deceptive Consumer Sales Act, and Washington Consumer Protection Act.

## II        PARTIES

### Plaintiff I.T.

13.    Plaintiff I.T. is a citizen of the State of Washington, residing in King County, and brings this action both in an individual capacity, and on behalf of all others similarly situated.

14.    In or around 2024, Plaintiff I.T. utilized Defendant's Website on her personal electronic devices to request an appointment for addiction treatment services and complete Defendant's online addiction assessment, and consequently had her Sensitive Information tracked and disclosed, in the same manner as depicted in Sec. IV(A)(d), *infra*.

15.    Plaintiff I.T. never authorized Defendant to disclose any aspect of her communications with Defendant through its Website to third parties, including the Sensitive Information that she provided to Defendant.

16.    On every occasion that she visited Defendant's Website, Plaintiff I.T. possessed accounts with Google and Facebook, and she accessed Defendant's Website while logged into her Google and Facebook accounts on the same device.

17.    After providing her Sensitive Information to Defendant through the Website, Plaintiff I.T. immediately began seeing targeted online advertisements for addiction treatment services.

### Plaintiff S.R.

18.    Plaintiff S.R. is a citizen of the State of Indiana, residing in Scott County, and brings this action both in an individual capacity, and on behalf of all others similarly situated.

19.    In or around 2024, Plaintiff S.R. utilized Defendant's Website on her personal electronic devices to request an appointment for addiction treatment services and complete

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Defendant's online addiction assessment, and consequently had her Sensitive Information tracked and disclosed, in the same manner as depicted in Sec. IV(A)(d), *infra*.

20.     Plaintiff S.R. never authorized Defendant to disclose any aspect of her communications with Defendant through its Website to third parties, including the Sensitive Information that she provided to Defendant.

21.     On every occasion that she visited Defendant's Website, Plaintiff S.R. possessed accounts with Google and Facebook, and she accessed Defendant's Website while logged into her Google and Facebook accounts on the same device.

22.     After providing her Sensitive Information to Defendant through the Website, Plaintiff S.R. immediately began seeing targeted online advertisements for addiction treatment services.

***Plaintiff A.K.***

23.     Plaintiff A.K. is a citizen of the State of Missouri, residing in Franklin County, and brings this action both in an individual capacity, and on behalf of all others similarly situated.

24.     In or around 2024, Plaintiff A.K. utilized Defendant's Website on her personal electronic devices to request an appointment for addiction treatment services and complete Defendant's online addiction assessment, and consequently had her Sensitive Information tracked and disclosed, in the same manner as depicted in Sec. IV(A)(d), *infra*.

25.     Plaintiff A.K. never authorized Defendant to disclose any aspect of her communications with Defendant through its Website to third parties, including the Sensitive Information that she provided to Defendant.

26.     On every occasion that she visited Defendant's Website, Plaintiff A.K. possessed accounts with Google and Facebook, and she accessed Defendant's Website while logged into her Google and Facebook accounts on the same device.

CLASS ACTION COMPLAINT - 6

27.     After providing her Sensitive Information to Defendant through the Website, Plaintiff A.K. immediately began seeing targeted online advertisements for addiction treatment services.

28.     Plaintiff A.K. is a citizen of the state of Missouri, residing in Franklin County, and brings this action both in an individual capacity, and on behalf of all others similarly situated.

**Plaintiff M.G.**

29.     Plaintiff M.G. is a citizen of the State of Ohio, residing in Gallia County, and brings this action both in an individual capacity, and on behalf of all others similarly situated.

30.     In or around 2024, Plaintiff M.G. utilized Defendant's Website on her personal electronic devices to request an appointment for addiction treatment services and complete Defendant's online addiction assessment, and consequently had her Sensitive Information tracked and disclosed, in the same manner as depicted in Sec. IV(A)(d), *infra*.

31.     Plaintiff M.G. never authorized Defendant to disclose any aspect of her communications with Defendant through its Website to third parties, including the Sensitive Information that she provided to Defendant.

32.     On every occasion that she visited Defendant's Website, Plaintiff M.G. possessed accounts with Google and Facebook, and she accessed Defendant's Website while logged into her Google and Facebook accounts on the same device.

33.     After providing her Sensitive Information to Defendant through the Website, Plaintiff M.G. immediately began seeing targeted online advertisements for addiction treatment services.

CLASS ACTION COMPLAINT - 7

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

*Defendant ChoicePoint LLC*

2

     34.     Defendant ChoicePoint LLC is a limited liability corporation incorporated in the

3

State of New Jersey, with its principal place of business at 23-00 Route 208, Suite 2-9, Fair Lawn,

4

NJ 07410 in Bergen County.

5

          **III**         **JURISDICTION AND VENUE**

6

     35.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness

7

Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of

8

$5,000,000 exclusive of interest and costs, there are more than 100 putative class members and

9

minimal diversity exists because Plaintiffs and many putative class members are citizens of a

10

different state than Defendant. This Court also has supplemental jurisdiction pursuant to 28

11

U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

12

     36.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this

13

Complaint alleges question of federal laws under the ECPA (18 U.S.C. § 2511, *et seq.*).

14

     37.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a)

15

because all claims alleged herein from part of the same case or controversy.

16

     38.     This Court has personal jurisdiction over Defendant because Defendant regularly

17

conducts business in the State of Washington, and because Defendant has advertised its services

18

to consumers in the State of Washington and in this judicial district.

19

     39.     Personal jurisdiction is also proper because Defendant committed tortious acts in

20

the State of Washington and this judicial district and Plaintiffs' claims arise out of such acts,

21

and/or because Defendant has otherwise made or established contacts in the State of Washington

22

and in this judicial district sufficient to permit the exercise of personal jurisdiction.

23

24

CLASS ACTION COMPLAINT - 8

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

40.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this action occurred in this judicial district.

## IV    FACTUAL ALLEGATIONS

### A.    DEFENDANT'S USE OF THIRD-PARTY TRACKING TECHNOLOGIES

#### 1.    Google and Facebook's Mass Advertising Surveillance Operation

41.     Google is the largest digital advertiser in the country, accounting for 26.8-percent of the total digital advertising revenue generated in the United States.[4] In 2023, Google's advertising revenue of $238 billion accounted for 77-percent of its total revenue for the year.[5]

42.     Google advertises Google Analytics and other Business Tools to website operators, like Defendant, claiming they will allow the operator to "[u]nderstand [their] site and app users," "check the performance of [their] marketing," and "[g]et insights only Google can give."[6] But, in order for website operators to get information from Google Analytics about their website's visitors, they must allow data collection through installation of Google's Tracking Tools on their website.[7]

---

[4] *Share of major ad-selling companies in digital advertising revenue in the United States*, STATISTA (May 2024), https://www.statista.com/statistics/242549/digital-ad-market-share-of-major-ad-selling-companies-in-the-us-by-revenue/#:~:text=In%202023%2C%20Google%20accounted%20for,21.1%20and%2012.5%20percent%2C%20respectively https://www.scientificamerican.com/article/7-in-10-smartphone-apps-share-your-data-with-third-party-services/ (last visited Nov. 22, 2024).

[5] Florian Zandt, *Google's Ad Revenue Dwarfs Competitors*, STATISTA (Sep. 10, 2024), https://www.statista.com/chart/33017/annual-advertising-revenue-of-selected-tech-companies-offering-search-solutions/#:~:text=Online%20advertising&text=Alphabet%2C%20the%20company%20behind%20the,overall%20revenue%20this%20past%20year (last visited Nov. 22, 2024).

[6] *Welcome to Google Analytics*, GOOGLE, https://analytics.google.com/analytics/web/provision/?authuser=0#/provision (last visited Nov. 22, 2024).

[7] *See* Aaron Ankin & Surya Matta, *The High Privacy Cost of a "Free" Website*, THE MARKUP, https://themarkup.org/blacklight/2020/09/22/blacklight-tracking-advertisers-digital-privacy-sensitive-websites (last visited Nov. 22, 2024).

CLASS ACTION COMPLAINT - 9

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

43.    Indeed, on its *Privacy & Terms* page, Google admits that it collects information from third party websites, stating that: "[m]any websites and apps use Google services to improve their content and keep it free. When they integrate our services, these sites and apps share information with Google."[8]

44.    Google also admits that it uses the information collected from third party websites, such as Defendant's, to sell targeted advertising, explaining to users that: "[f]or example, a website that sells mountain bikes might use Google's ad services. After you visit that site, you could see an ad for mountain bikes on a different site that shows ads served by Google."[9]

45.    Facebook operates the world's largest social media company, and the vast majority of its revenue comes from selling advertising space on its platform. In 2021, Facebook generated $117 billion, roughly 97% of which was derived from the sale of digital advertisements.[10]

46.    Facebook markets its Business Tools to website operators, claiming that that its Business Tools can:

> [H]elp website owners and publishers, app developers, and business partners, including advertisers and others, integrate and share data with Meta, understand and measure their products and services, and better reach and serve people who use or might be interested in their products and services.[11]

47.    But, like with Google, website operators using Facebook's Business Tools must install Facebook's Tracking Tools on their website. Facebook readily admits that it "receives

---

[8] *Privacy & Terms – How Google uses information from sites or apps that use our services*, GOOGLE, https://policies.google.com/technologies/partner-sites (last visited Nov. 22, 2024).

[9] *Id.*

[10] *Meta Reports Fourth Quarter and Full Year 2021 Results*, META, https://investor.fb.com/investor-news/press-release-details/2022/Meta-Reports-Fourth-Quarter-and-Full-Year-2021-Results/default.aspx (last visited Nov. 22, 2024).

[11] *The Meta Business Tools*, FACEBOOK HELP CENTER, https://www.facebook.com/help/331509497253087?helpref=faq_content (last visited Nov. 22, 2024).

CLASS ACTION COMPLAINT - 10

information from [third-party] businesses and organizations," such as Defendant, and uses that information to sell targeted advertising.[12] By way of example, Facebook's online *Help Center* explains that users "may see [Facebook] ads for hotel deals if [they] visit travel websites."[13]

48.     While Google and Facebook admit that they collect information from third-party websites through the Tracking Tools, neither provides, nor could provide, a publicly available list of every webpage on which their Tracking Tools are installed. As such, the vague descriptions of Google and Facebook's data collection practices referenced above could not given Plaintiffs and Class Members any reason to think that Defendant was part of Google and Facebook's surveillance network. Moreover, as Defendant does not disclose its use of Google and Facebook's Tracking Tools, Plaintiffs and Class Members could not have been reasonably expected to review any of Google and Facebook's privacy statements in connection with their use of the Website

49.     Google and Facebook aggregate the user information that they collect from third-party websites into 'advertising profiles' consisting of all of the data that they have collected about a given user.[14] With these advertising profiles, Google and Facebook can sell hyper-precise advertising services, allowing their clients to target internet users based on combinations of their location, age, race, interests, hobbies, life events (e.g., recent marriages, graduation, or

---

[12] *How Meta receives information from other business and organizations*, FACEBOOK HELP CENTER, https://www.facebook.com/help/2230503797265156/?helpref=related_articles (last visited Nov. 22, 2024).

[13] *Id.*

[14] Bennett Cyphers & Gennie Gebhart, *Behind the One-Way Mirror: A Deep Dive Into the Technology of Corporate Surveillance*, ELECTRONIC FRONTIER FOUNDATION (2019), *available online at*: https://www.eff.org/files/2019/12/11/behind_the_one-way_mirror-a_deep_dive_into_the_technology_of_corporate_surveillance_0.pdf.

CLASS ACTION COMPLAINT - 11

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

relocation), political affiliation, education level, home ownership status, marital status, household income, type of employment, use of specific apps or websites, and more.[15]

50.    Google and Facebook's surveillance of individual's internet usage is ubiquitous. In 2017, Scientific American reported that over 70-percent of smartphone apps report "personal data to third-party tracking companies like Google[, and] Facebook[.]"[16] Google trackers are present on 74-percent of all web traffic, and 16-percent of websites have a hidden Facebook tracking Pixel.[17]

51.    Moreover, as in this case, the data collected by Google and Facebook often pertains to the most personal and sensitive aspects of an individual's life. For example:

   a.    93-percent of pornography websites allow third parties, including Google and Facebook, to collect their user's browsing habits.[18] In fact, Google advertising trackers were found on 73-percent of pornography websites.[19]

   b.    81-percent of the most popular mobile apps for managing depression and quitting smoking allowed Facebook and/or Google to access subscriber information, including health diary entries and self-reports about substance abuse.[20]

---

[15] *About audience segments*, GOOGLE ADS, https://support.google.com/google-ads/answer/2497941?hl=en#zippy=%2Cin-market-segments%2Caffinity-segments%2Clife-events%2Cdetailed-demographics (last visited Nov. 22, 2024); *Facebook Ads: Who You Can Target*, SEOM Interactive, https://searchenginesmarketer.com/company/resources/facebook-ads-can-target/ (last visited Nov. 22, 2024).

[16] Narseo Vallina-Rodriguez & Srikanth Sundaresan, *7 in 10 Smartphone Apps Share Your Data with Third-Party Services*, SCIENTIFIC AMERICAN (May 30, 2017), https://www.scientificamerican.com/article/7-in-10-smartphone-apps-share-your-data-with-third-party-services/ (last visited Nov. 22, 2024).

[17] *WhoTracksMe*, Ghostery, https://www.ghostery.com/whotracksme/ (last visited Nov. 22, 2024).

[18] Elena Maris, Timothy Libert & Jennifer R. Henrichsen, *Tracking sex: The implications of widespread sexual data leakage and tracking on porn websites*, NEW MEDIA & SOCIETY (2020), *available online at*: https://journals.sagepub.com/doi/10.1177/1461444820924632.

[19] *Id*.

[20] Kit Huckvale, John Torous & Mark E. Larsen, *Assessment of the Data Sharing and Privacy Practices of Smartphone Apps for Depression and Smoking Cessation*, JAMA NETWORK OPEN (2019), *available online at*: https://pubmed.ncbi.nlm.nih.gov/31002321/.

CLASS ACTION COMPLAINT - 12

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

c. Twelve of the largest pharmacy providers in the United States send information regarding user's purchases of products such as pregnancy tests, HIV tests, prenatal vitamins, and Plan B to online advertisers.[21] For example, when an online shopper searches for a pregnancy test, views the product page for a pregnancy test, or adds a pregnancy test to their online shopping cart on Kroger's website, that information is transmitted to Google and Facebook.[22]

d. Thirty-three of the most popular crisis center websites provide information to Facebook through its Meta Pixel, including, in some cases, that users filled out a contact form or clicked a button to initiate a call to a suicide helpline.[23]

52.    This monumental, invasive surveillance of Americans' internet usage is not accidental. As Google's then-CEO Eric Schmit admitted in 2010: "We know where you are. We know where you've been. We can more or less know what you're thinking about."[24] Likewise, in 2008, Facebook CEO Mark Zuckerberg predicted that the amount of information shared by individuals online will likely double every year, and Facebook's best strategy is to be "pushing that forward."[25]

---

[21] Darius Tahir & Simon Fondrie-Teitler, *Need to Get Plan B or an HIV Test Online? Facebook May Know About It*, THE MARKUP (June 30, 2023), https://themarkup.org/pixel-hunt/2023/06/30/need-to-get-plan-b-or-an-hiv-test-online-facebook-may-know-about-it (last visited Nov. 22, 2024).

[22] Jon Keegan, *Forget Milk and Eggs: Supermarkets Are Having a Fire Sale on Data About You*, THE MARKUP (Feb. 16, 2023), https://themarkup.org/privacy/2023/02/16/forget-milk-and-eggs-supermarkets-are-having-a-fire-sale-on-data-about-you (last visited Nov. 22, 2024).

[23] Colin Lechner & Jon Keegan, *Suicide Hotlines Promise Anonymity. Dozens of Their Websites Send Sensitive Data to Facebook*, THE MARKUP (June 30, 2023), https://themarkup.org/pixel-hunt/2023/06/13/suicide-hotlines-promise-anonymity-dozens-of-their-websites-send-sensitive-data-to-facebook (last visited Nov. 22, 2024).

[24] Andrew Orlowski, *Google's Schmidt: We know what you're thinking*, THE REGISTER (Oct. 4, 2020), https://www.theregister.com/2010/10/04/google_ericisms/ (last visited Nov. 22, 2024).

[25] Michael Zimmer, *Mark Zuckerberg's Theory of Privacy,* THE WASHINGTON POST (Feb. 4, 2014), https://www.washingtonpost.com/lifestyle/style/mark-zuckerbergs-theory-of-privacy/2014/02/03/2c1d780a-8cea-11e3-95dd-36ff657a4dae_story.html (last visited Nov. 22, 2024).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

53.    In fact, Google and Facebook value user information so highly that they provide their Business Tools to many website operators for free, all to expand their surveillance apparatus.[26]

54.    When website operators, like Defendant, make use of Google and Facebook's Business Tools, they are essentially choosing to participate in Google and Facebook's mass surveillance network, and in return they benefit from Google and Facebook's collection of user data, at the expense of their website users' privacy. For example, in exchange for allowing it to collect user information, Facebook allows website operators to target customers with "dynamic advertisements" personalized to individual consumers using the user information that Facebook collects from all across the internet.[27] Likewise, Google rewards website operators for providing it with their user's information by granting access to its Analytics platform, which leverages demographic data collected by Google to provide detailed analyses of the website's user base.[28]

55.    In many cases, a website operator's use of third-party tracking software is not disclosed whatsoever in its privacy policy.[29] Even where the use of such third-party software is disclosed, such disclosures are often hidden and cloaked in such confusing, technical and overly legal language as to be indecipherable to the typical internet user.[30]

---

[26] *Analytics Overview*, GOOGLE, https://marketingplatform.google.com/about/analytics/ (last visited Nov. 22, 2024) ("Google Analytics gives you the tools, free of charge"); *Meta Business Suite FAQ*, META, https://www.facebook.com/business/tools/meta-business-suite/help (last visited Nov. 22, 2024) ("Meta Business Suite is a free tool").

[27] *Retargeting*, META, https://www.facebook.com/business/help/308855623839366?id=818859032317965 (last visited Nov. 22, 2024).

[28] *Google Marketing Platform – Features*, GOOGLE, https://marketingplatform.google.com/about/analytics/features/ (last visited Nov. 22, 2024).

[29] *See* Woodrow Hartzog, *Privacy's Blueprint*, 60-67 (Harvard University Press 2018) (detailing deficiencies with online privacy policies).

[30] *Id.*

CLASS ACTION COMPLAINT - 14

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

56.     Moreover, for even a conscientious internet user, the massive volume of privacy policies encountered through routine internet use makes reviewing each and every one practically impossible. According to one study, it would take the average internet user 244 hours – or 30.5 working days – to read the privacy policy of every new website that they visited in a single year.[31]

**2.     Pixels Can Record Almost Every Interaction Between a User and a Website**

57.     In order to use Google and Facebook's Business Tools, Defendant installed Google and Facebook's Tracking Tools, including tracking Pixels, onto its website.

58.     Pixels are one of the tools used by website operators to track user behavior. As the Federal Trade Commission ("FTC") explains, a Pixel is:

> [A] small piece of code that will be placed into the website or ad and define [the Pixel operator's] tracking goals such as purchases, clicks, or pageviews…
> Pixel tracking can be monetized several ways. One way to monetize pixel tracking is for companies to use the tracking data collected to improve the company's own marketing campaigns…Another is that companies can monetize the data collected by further optimizing their own ad targeting systems and charging other companies to use its advertising offerings.[32]

59.     Pixels can collect a shocking amount of information regarding an individual's online behavior, including the webpages viewed by the user, the amount of time spent by the user on specific webpages, the specific buttons and hyperlinks that the user clicks, the items that the user adds to an online shopping cart, the purchases that a user makes through an online retailer, the text entered by the user into a website search bar, and even the information provided by the user on an online form.[33]

---

[31] Aleecia M. McDonald & Lorrie Faith Cantor, *The Cost of Reading Privacy Policies*, I/S: A JOURNAL OF LAW AND POL. FOR THE INFO. SOC. (2008), *available online at*: https://lorrie.cranor.org/pubs/readingPolicyCost-authorDraft.pdf.

[32] *Lurking Beneath the Surface: Hidden Impacts of Pixel Tracking*, FEDERAL TRADE COMMISSION – OFFICE OF TECHNOLOGY (Mar. 6, 2023), https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2023/03/lurking-beneath-surface-hidden-impacts-pixel-tracking (last visited Nov. 22, 2024).

[33] *See id.*; *How does retargeting on Facebook help your business?*, META, https://www.facebook.com/business/goals/retargeting (last visited Nov. 22, 2024); Tom Kemp, *"Oops! I Did It Again" … Meta Pixel Still Hoovering Up Our Sensitive Data*, MEDIUM,

CLASS ACTION COMPLAINT - 15

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

60.    But most internet users are completely unaware that substantial information about their internet usage is being collected through tracking Pixels. The FTC warns that:

> Traditional controls such as blocking third party cookies may not entirely prevent pixels from collecting and sharing information. Additionally, many consumers may not realize that tracking pixels exist because they're invisibly embedded within web pages that users might interact with…Academic and public reporting teams have found that thousands of the most visited webpages have pixels and other methods that leak personal information to third parties.[34]

### 3.    The Pixels Installed on Defendant's Website Transmit Personally Identifiable Information to Google and Facebook

61.    Every website is hosted by a computer "server" that holds the website's contents.

62.    To access a website, individuals use "web browsers." Web browsers are software applications that allow consumers to navigate the web and view and exchange electronic information and communications over the Internet.  Each "client device" (such as a computer, tablet, or smartphone) accesses web content through a web browser (such as Google's Chrome, Mozilla's Firefox, Apple's Safari, or Microsoft's Edge).

63.    Communications between a website server and web browser consist of Requests and Responses. Any given browsing session may consist of hundreds or even thousands of individual Requests and Responses. A web browser's Request essentially asks the website to provide certain information, such as the contents of a given webpage when the user clicks a link, and the Response from the website sends back the requested information – the web pages' images, words, buttons, and other features that the browser shows on the user's screen as they navigate the website.

---

https://tomkemp00.medium.com/oops-i-did-it-again-meta-pixel-still-hoovering-up-our-sensitive-data-f99c7b779d47#_ftn1 (last visited Nov. 22, 2024).

[34] *Lurking Beneath the Surface, supra* note 32.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

64.     Additionally, on most websites, the Response sent back to the user's web browser directs the browser to create small files known as 'cookies' on the user's device.[35] These cookies are saved by the user's web browser, and are used to identify the website user as they browse the website or on subsequent visits to the site.[36] For example, in a more innocuous use case, a cookie may allow the website to remember a user's name and password, language settings, or shopping cart contents.[37]

65.     When a Google/Facebook user logs onto their account, their web browser records a Google/Facebook tracking cookie.[38] These cookies include a specific line of code that links the web browser to the user's Google/Facebook account.[39]

66.     Google and Facebook's Pixels use cookies, but operate differently than cookies. Rather than directing the browser to save a file on the user's device, the Pixels acquires information from the browser, without notifying the user.  The information can include details about the user, his or her interactions with the Website, and information about the user's environment (*e.g.,* type of device, type of browser, and sometimes even the physical location of the device).

67.     Simultaneously, the Google and Facebook Pixels, like those installed on Defendant's Website, request identifying information from any Google and Facebook cookies previously installed on the user's web browser.

---

[35] *What is a web browser?*, MOZILLA, https://www.mozilla.org/en-US/firefox/browsers/what-is-a-browser/ (last visited Nov. 22, 2024).

[36] *Id.*

[37] *Id.*

[38] Cyphers, *supra* note 14.

[39] *Id.*

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

68.     The Pixel then combines the data it received from the browser with the data it acquired from the cookie, and instructs the web browser to transmit the information back to Google and Facebook. As a result, Google and Facebook can link all of the user information collected by their Pixels on the Defendant's Website to the user's identity, via the user's Google or Facebook profile.  Thus, even if a user never actually logs into a website, or fills out a form, the website, along with Google and Facebook, can know the user's identity.

69.     A remarkable number of Americans possess a Google or Facebook account. According to a 2023 survey, 68-percent of Americans report that they are users of Facebook.[40] And just one of Google's many products, its Gmail e-mail client, is used by over one-third of Americans.[41] When these users visit a website, like Defendant's, that utilizes a Google or Facebook Pixel, any information collected by the Pixel can be linked to the user's identity through the Google and Facebook cookies installed on the user's web browser.

70.     However, it is not only Google and Facebook account holders that are at risk of having Pixel-collected website data linked to their identities. Rather, Google and Facebook utilize sophisticated data tracking methods to identify even those few users who do not have a Google or Facebook account.

71.     Google and Facebook's Pixels, like those on Defendant's website, can acquire information about the user's device and browser, such as their screen resolution, time zone setting, browser software type and version, operating system type and version, language setting, and IP address.

---

[40] Katherine Schaeffer, *5 facts about how Americans use Facebook, two decades after its launch*, PEW RESEARCH (Feb. 2, 2024), https://www.pewresearch.org/short-reads/2024/02/02/5-facts-about-how-americans-use-facebook-two-decades-after-its-launch/ (last visited Nov. 22, 2024).

[41] *See* Harsha Kiran, *49 Gmail Statistics To Show How Big It Is In 2024*, TECHJURY (Jan. 3, 2024), https://techjury.net/blog/gmail-statistics/ (last visited Nov. 22, 2024) ("Gmail accounts for 130.9 million of the total email users in the US"). The United States population is approximately 337.4 million. *See* UNITED STATES CENSUS BUREAU, https://www.census.gov/popclock/ (last visited Nov. 22, 2024).

CLASS ACTION COMPLAINT - 18

72.    An internet user's combination of such device and browser characteristics, commonly referred to as their "browser fingerprint," is "often unique."[42] By tracking this browser fingerprint, Google and Facebook are able to compile a user's activity across the internet.[43] And, as Google and Facebook continuously compile user data over time, their understanding of the user's browser fingerprint becomes more sophisticated such that they need only to collect a single piece of identifying information to identify the user linked to a browser fingerprint.

**4.    Defendant Disclosed Plaintiffs' and Class Members' Sensitive Information to Google and Facebook**

73.    To obtain an online addiction evaluation or request an appointment with Defendant, Plaintiffs and Class Members were required to complete online contact and evaluation forms on Defendant's Websites.

74.    Unbeknownst to Plaintiffs and Class Members, Defendant intentionally configured the Google and Facebook Pixels installed on its Website to capture and transmit the Sensitive Information that they communicated to Defendant while completing these online forms to at least seven unauthorized parties, including Google, Facebook, TikTok, Bing, Taboola, Pinterest, and Quora.

75.    The below screenshot ("Figure 1") shows that when Website users complete Defendant's online addiction assessment, the information requested and transmitted to Google by the Pixels installed on Defendant's website includes both the fact that the user completed a "Free Pre-Screening" as well as the result of that pre-screening – in this case, that the user's addiction was determined to be "extremely severe."

---

[42] Cyphers, *supra* note 14.

[43] *Id.*

CLASS ACTION COMPLAINT - 19

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

76.     Further, the information transmitted to Google was accompanied by specific lines of code linking the Sensitive Information provided by Plaintiffs to their identities. The following screenshot shows that the Google Pixel on Defendant's website transmitted the identifier number attached to Google's '_cid' and '_sid' cookies, which identifies, and links the user's Website behavior to the user's Google account, along with other information that is commonly used to create a browser fingerprint, such as the user's language selection, screen resolution, operating system software and version number, and internet browser software and version number.



*Figure 1. Screenshot depicting back-end network traffic from Defendant's Website which shows information transmitted to Google when Website users complete Defendant's Free Pre-Screening Evaluation.*

CLASS ACTION COMPLAINT - 20

77.    Likewise, when the screenshots below ("Figures 2 & 3")  shows that when Website users submit a request for a free consultation for help managing their addiction, the Pixels installed on Defendant's transmit the fact that the user submitted an "Admissions & Scheduling Request" to Google, alongside the identifier number attached to Google's '_cid' and '_sid' cookies, along with other information that is commonly used to create a browser fingerprint, such as the user's language selection, screen resolution, operating system software and version number, and internet browser software and version number.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

✕  Headers  Payload  Preview  Response  Initiator  Timing  Cookies

▼Query String Parameters     view source     view decoded

v: 1
_v: j101
a: 1248062339
t: event
ni: 1
_s: 1
dl: https%3A%2F%2Fwww.choicepointhealth.com%2Fthank-you-ad%2F
ul: en-us
de: UTF-8
dt: Admissions%20&%20Scheduling%20Request%20-%20ChoicePoint
sd: 24-bit
sr: 1920x1080
vp: 561x901
je: 0
ec: Scheduling%20%20Submission
ea: Scheduling%20Submit
el: %2Fthank-you-ad%2F
_u: QACAAEABAAAAACAAI~
jid: 1800878360
gjid: 884646187
cid: 889571034.1730389856
tid: UA-189017554-1
_gid: 2122944430.1732320167
_r: 1
_slc: 1
gtm: 45He4bk0n81NRZN4RZv843519925za200
gcd: 131313131111
dma: 0
tag_exp: 101925629~102067555~102067808~102077855~102081485
z: 392942381

*Figures 2 & 3. Screenshots depicting back-end network traffic from Defendant's Website which shows information transmitted to Google when Website users request an appointment.*

78.    Defendant also transmits information to Facebook when Website users request an appointment. The below screenshot ("Figure 4") shows that the Facebook Pixel on Defendant's website transmits information informing Facebook that the user completed the online appointment form, alongside the identifier number linked to Facebook's '_fbp' cookie, which

CLASS ACTION COMPLAINT - 22

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

identifies the user's Facebook account, and other information that is commonly used to create a browser fingerprint, such as the user's screen resolution.



*Figure 4. Screenshot depicting back-end network traffic from Defendant's Website which shows information transmitted to Facebook when Website users request an appointment.*

79.    In their default state, Google and Facebook's Pixels record and transmit only "automatic events," consisting largely of routine user behavior, such as clicking a link, clicking on an advertisement, or viewing a webpage.[44] Defendant purposely configured the Google and Facebook Pixels on its Website to collect and transmit additional user data, including the results of online addiction evaluations.

80.    By installing third-party Tracking Tools, including tracking Pixels, on its Website, and by further configuring those Pixels to collect its Website user's Sensitive Information,

---

[44] *Automatically Collected Events*, GOOGLE ANALYTICS HELP, https://support.google.com/analytics/answer/9234069, (last visited on Nov. 22, 2024); *About automatic events*, META BUSINESS HELP CENTER, https://www.facebook.com/business/help/1292598407460746?id=1205376682832142 (last visited on Nov. 22, 2024).

CLASS ACTION COMPLAINT - 23

Defendant knowingly and intentionally caused Plaintiffs' and Class Members' Sensitive Information to be transmitted to third parties, including Google and Facebook.

**B.    DEFENDANT DISCLOSED PLAINTIFFS' AND CLASS MEMBERS' SENSITIVE INFORMATION TO THIRD PARTIES WITHOUT THEIR KNOWLEDGE OR CONSENT**

**1.    Defendant failed to inform Plaintiffs and Class Members of its disclosure of their Sensitive Information, in violation of its Privacy Policy**

81.    Defendant's Privacy Policy promises its Website users: "We don't sell, trade, or give away your personal information to anyone."[45] While Defendant's Privacy Policy discloses its use of Google Analytics, it states that Google Analytics only collects "information about your IP address, browser type, geographic location, device type, and other technical information."[46] Moreover, Defendant's Privacy Policy does not disclose its use of Facebook's Tracking Tools at all.

82.    These statements are lies. In fact, Defendant does disclose identifiable information to Google and other third parties, including the fact that its Website users, like Plaintiffs and Class Members, are seeking addiction treatment, and the results of its online evaluation of the severity of their addiction.

83.    Defendant breached Plaintiffs' and Class Members' right to privacy by unlawfully disclosing their Sensitive Information to third parties, including Google and Facebook. Specifically, Plaintiffs and Class Members had a reasonable expectation of privacy (based on Defendant's own representations to Plaintiffs and the Class that Defendant would not disclose their Sensitive Information to third parties). Defendant did not inform Plaintiffs and Class

---

[45] *Privacy Policy*, CHOICEPOINT, https://www.choicepointhealth.com/privacy-policy/ (last accessed Nov. 22, 2024).

[46] *Id.*

CLASS ACTION COMPLAINT - 24

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Members that it was sharing their Sensitive Information with third parties, including Google and Facebook.

84.    By engaging in this improper sharing of information without Plaintiffs' and Class Members' consent, Defendant violated its own Privacy Policy and breached Plaintiffs' and Class Members' right to privacy and unlawfully disclosed their Sensitive Information.

85.    Knowing just how invasive it can be when a user's Sensitive Information is disclosed without consent, Facebook explicitly stated, in an action pending against Facebook related to use of its Meta Pixel on a  healthcare provider's Website, that it requires Facebook Pixel users to "post a prominent notice on every page where the pixel is embedded and to link from that notice to information about exactly how the pixel works and what is being collected through it, so it is not invisible."[47]  Defendant did not abide by this policy.

86.    Despite never telling users like Plaintiffs and Class Members, Defendant allowed third parties such as Google and Facebook to intercept Plaintiffs' and Class Members' Sensitive Information and use it for advertising purposes.

## 2.    The Tracking Tools Used by Defendant Were Imperceptible to Plaintiffs and Class Members

87.    The Tracking Tools installed on Defendant's Website were invisible to Plaintiffs and Class Members. Without analyzing the network information transmitted by Defendant's Website through examination of its source code or the use of sophisticated web developer tools, there was no way for a Website user to discover the presence of the Tracking Tools. As a result,

---

[47] *See* Transcript of the argument on Plaintiff's Motion for Preliminary Injunction in *In re Meta Pixel Healthcare Litigation*, Case No. CV-22-03580-WHO (N.D. Cal. Nov. 9, 2022) (Hon. J. Orrick), at 19:12-18; *see also In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218 (N.D. Cal. Dec 22, 2022).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

typical internet users, such as Plaintiffs and Class Members, were unable to detect the Tracking Tools on Defendant's Website.

88.    Plaintiffs and Class Members were shown no disclaimer or warning that their Sensitive Information would be disclosed to any unauthorized third party without their express consent.

89.    Plaintiffs and Class Members did not know that their Sensitive Information was being collected and transmitted to an unauthorized third party.

90.    Because Plaintiffs and Class Members were not aware of the Google and Facebook Pixels on Defendant's website, or that their Sensitive Information would be collected and transmitted to Google and Facebook, they could not and did not consent to Defendant's conduct.

**C.    DEFENDANT WAS ENRICHED BY ITS DISCLOSURE OF PLAINTIFFS' AND CLASS MEMBERS' SENSITIVE INFORMATION TO THIRD PARTIES**

**1.    Defendant Received Material Benefits in Exchange for Plaintiffs' Sensitive Information**

91.    As explained, *supra*, users of Google and Facebook's Business Tools, like Defendant, receive access to advertising and marketing analytics services in exchange for installing Google and Facebook's Tracking Tools on their website.

92.    Upon information and belief, Defendant, as a user of Google and Facebook's Business Tools, received compensation in the form of advanced advertising services and cost-effective marketing on third-party platforms in exchange for allowing Google and Facebook to collect Plaintiffs' and Class Members' Sensitive Information.

**2.    Plaintiffs' and Class Members' Data Had Financial Value**

93.    Moreover, Plaintiffs' and Class Members' Sensitive Information had value, and Defendant's disclosure and interception of that Sensitive Information harmed Plaintiffs and the Class.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

94.     According to Facebook's annual reports, the value it derives from user data has continuously risen. "In 2013, the average American's data was worth about $19 per year in advertising sales to Facebook, according to its financial statements. In 2020, [it] was worth $164 per year."[48]

95.     Conservative estimates suggest that in 2018, Internet companies earned $202 per American user from mining and selling data. That figure is only due to keep increasing; estimates for 2022 are as high as $434 per user, for a total of more than $200 billion industry wide.

96.     Several companies have products through which they pay consumers for a license to track certain information. Google, Nielsen, UpVoice, HoneyGain, and SavvyConnect are all companies that pay for browsing history information.

97.     Facebook itself has paid users for their digital information, including browsing history. Until 2019, Facebook ran a "Facebook Research" app through which it paid $20 a month for a license to collect browsing history information and other communications from consumers between ages 13 and 35.

98.     The unauthorized disclosure of Plaintiffs' and Class Members' private and Sensitive Information has diminished the value of that information, resulting in harm including Plaintiffs and Class Members.

**D.     PLAINTIFFS' AND CLASS MEMBERS' REASONABLE EXPECTATION OF PRIVACY**

99.     At all times when Plaintiffs and Class Members provided their Sensitive Information to Defendant, they each had a reasonable expectation that the information would remain confidential and that Defendant would not share the Sensitive Information with third

---

[48] Geoffrey A. Fowler, *There's no escape from Facebook, even if you don't use it*, THE WASHINGTON POST (Aug. 29, 2021), https://www.washingtonpost.com/technology/2021/08/29/facebook-privacy-monopoly/ (last visited Nov. 22, 2024).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

parties for a commercial purpose, unrelated to providing them with access to addiction counseling.

100.    Privacy polls and studies show that the overwhelming majority of Americans consider obtaining an individual's affirmative informed consent before a company collects and shares that individual's data to be one of the most important privacy rights.

101.    For example, a recent Consumer Reports study shows that 92-percent of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumer data, and the same percentage believe those companies and websites should be required to provide consumers with a complete list of the data that is collected about them.[49]

102.    Americans are particularly sensitive about disclosing struggles with drug and alcohol addiction. Numerous studies have noted that feelings of shame often cause those struggling with addiction to avoid seeking treatment.[50] As a result, "only 13 percent of people with drug use disorders receive any treatment."[51]

---

[49] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety-a3980496907 (last visited Nov. 22, 2024).

[50] *See* R Hammarlund, KA Crapanzano, L Luce, L Mulligan & KM Ward, *Review of the effects of self-stigma and perceived social stigma on the treatment-seeking decisions of individuals with drug- and alcohol-use disorder*, SUBST. ABUSE & REHABIL. (2018), *available online at*: https://pmc.ncbi.nlm.nih.gov/articles/PMC6260179/#sec1; Abigail W Batchelder, Tiffany R Glynn, Judith T Moskowitz, Torsten B Neilands, Samantha Dilworth, Sara L Rodriguez & Adam W Carrico, *The shame spiral of addiction: Negative self-conscious emotion and substance use*, PLOS ONE (2022), *available online at*: https://pmc.ncbi.nlm.nih.gov/articles/PMC8932605/.

[51] Dr. Nora Valkow, *Making Addiction Treatment More Realistic and Pragmatic: The Perfect Should Not be the Enemy of the Good*, NATIONAL INSTITUTE ON DRUG ABUSE (Jan. 4, 2022), https://nida.nih.gov/about-nida/noras-blog/2022/01/making-addiction-treatment-more-realistic-pragmatic-perfect-should-not-be-enemy-good#:~:text=Recent%20data%20from%202020%20shows,use%20disorders%20receive%20any%20treatment (last visited Nov. 22, 2024).

CLASS ACTION COMPLAINT - 28

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

2

103.    Personal data privacy and obtaining consent to share Sensitive Information are material to Plaintiffs and Class Members.

3

4

104.    Plaintiffs relied on the statements made by Defendant, including in its Privacy Policy, when deciding to communicate their Sensitive Information to it through its Website.

5

## V    TOLLING AND ESTOPPEL

6

7

105.    Any applicable statutes of limitation have been tolled by Defendant's knowing and active concealment of its incorporation of Google and Facebook's Tracking Tools into its Website.

8

9

106.    The Pixels and other tracking tools on Defendant's Website were and are invisible to the average website visitor.

10

11

107.    Through no fault or lack of diligence, Plaintiffs and Class Members were deceived and could not reasonably discover Defendant's deception and unlawful conduct.

12

13

108.    Plaintiffs were ignorant of the information essential to pursue their claims, without any fault or lack of diligence on their part.

14

15

16

17

18

109.    Defendant had exclusive knowledge that its Website incorporated the Pixels and other Tracking Tools and yet failed to disclose to customers, including Plaintiffs and Class Members, that by requesting an appointment, or completing Defendant's online addiction evaluation through the Website, Plaintiffs' and Class Members' Sensitive Information would be disclosed or released to unauthorized third parties, including Google and Facebook.

19

20

21

22

23

110.    Under the circumstances, Defendant was under a duty to disclose the nature, significance, and consequences of its collection and treatment of its customers' Sensitive Information. In fact, to the present, Defendant has not conceded, acknowledged, or otherwise indicated to its customers that it has disclosed or released their Sensitive Information to

24

CLASS ACTION COMPLAINT - 29

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

unauthorized third parties. Accordingly, Defendant is estopped from relying on any statute of limitations.

111.    Moreover, all applicable statutes of limitation have also been tolled pursuant to the discovery rule.

112.    The earliest that Plaintiffs or Class Members, acting with due diligence, could have reasonably discovered Defendant's conduct would have been shortly before the filing of this Complaint.

## VI    CLASS ALLEGATIONS

113.    This action is brought by the named Plaintiffs on their own behalves, and on behalf of a proposed Class of all other persons similarly situated under Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4).

114.    The Nationwide Class that Plaintiffs seek to represent is defined as follows:

**The Nationwide Class**

All natural persons who used Defendant's Website to request an appointment and/or complete Defendant's online addiction evaluation, and whose Sensitive Information was disclosed or transmitted to Facebook, Google, or any other unauthorized third party.

115.    In addition to the claims asserted on behalf of the Nationwide Class, Plaintiffs assert claims on behalf of separate Ohio, Indiana, and Washington Subclasses, which are defined as follows:

**Ohio Subclass**

All natural persons residing in Ohio who used Defendant's Website to request an appointment and/or complete Defendant's online addiction evaluation, and whose Sensitive Information was disclosed or transmitted to Facebook, Google, or any other unauthorized third party.

**Indiana Subclass**

All natural persons residing in Indiana who used Defendant's Website to request an appointment and/or complete Defendant's online addiction evaluation, and whose

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Sensitive Information was disclosed or transmitted to Facebook, Google, or any other unauthorized third party.

**Washington Subclass**

All natural persons residing in the State of Washington who used Defendant's Website to request an appointment and/or complete Defendant's online addiction evaluation, and whose Sensitive Information was disclosed or transmitted to Facebook, Google, or any other unauthorized third party.

116.    Excluded from the proposed Classes are any claims for personal injury, wrongful death, or other property damage sustained by the Classes; and any Judge conducting any proceeding in this action and members of their immediate families.

117.    Plaintiffs reserve the right to amend the definitions of the Classes or add subclasses if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

118.    **Numerosity.** The Class is so numerous that the individual joinder of all members is impracticable. There are at least 1,000 individuals that have been impacted by Defendant's actions. Moreover, the exact number of those impacted is generally ascertainable by appropriate discovery and is in the exclusive control of Defendant.

119.    **Commonality.** Common questions of law or fact arising from Defendant's conduct exist as to all members of the Class, which predominate over any questions affecting only individual Class Members. These common questions include, but are not limited to, the following:

a)    Whether and to what extent Defendant had a duty to protect the Sensitive Information of Plaintiffs and Class Members;

b)    Whether Defendant had duties not to disclose the Sensitive Information of Plaintiffs and Class Members to unauthorized third parties;

c)    Whether Defendant violated its own privacy policy by disclosing the Sensitive Information of Plaintiffs and Class Members to third parties, including Google and Facebook;

CLASS ACTION COMPLAINT - 31

d)  Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their Sensitive Information would be disclosed to third parties;

e)  Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class Members that their Sensitive Information was being disclosed without their consent;

f)  Whether Defendant adequately addressed and fixed the practices which permitted the unauthorized disclosure of patients' Sensitive Information;

g)  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to keep the Sensitive Information belonging to Plaintiffs and Class Members free from unauthorized disclosure;

h)  Whether Defendant violated the statutes asserted as claims in this Complaint;

i)  Whether Plaintiffs and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

j)  Whether Defendant knowingly made false representations as to their data security and/or privacy policy practices;

k)  Whether Defendant knowingly omitted material representations with respect to their data security and/or privacy policy practices; and

l)  Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Defendant's disclosure of their Sensitive Information.

120.    **Typicality.** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Sensitive Information, like that of every other Class Member, was compromised as a result of Defendant's incorporation and use of the Tracking Tools.

121.    **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

122.    **Predominance**. Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members in that all the Plaintiffs' and Class Members' data was unlawfully stored and disclosed to unauthorized third parties, including third parties like Google and Facebook, in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

123.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

124.    Defendant acted on grounds that apply generally to the Class as a whole so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

125.    Likewise, particular issues under Fed. R. Civ. P. 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a) Whether Defendant owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, and safeguarding their Sensitive Information and not disclosing it to unauthorized third parties;

b) Whether Defendant breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Sensitive Information;

c) Whether Defendant failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d) Whether Defendant adequately and accurately informed Plaintiffs and Class Members that their Sensitive Information would be disclosed to third parties;

e) Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information disclosed to third parties;

f) Whether Class Members are entitled to actual, consequential, and/or nominal damages and/or injunctive relief as a result of Defendant's wrongful conduct.

126.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the unauthorized disclosures that have taken place.

## <u>COUNT I</u>
### COMMON LAW INVASION OF PRIVACY - INTRUSION UPON SECLUSION
### <u>*(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Ohio, Indiana, and/or Washington Subclass(es))*</u>

127.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 126 as if fully set forth herein.

128.    Plaintiffs and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, highly personal Sensitive Information; and (2) making personal

CLASS ACTION COMPLAINT - 34

decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to the exfiltration of their communications without Plaintiffs' and Class Members' knowledge or consent.

129.    Plaintiffs and Class Members had a reasonable expectation of privacy in their communications with Defendant via its Website and the communications platforms and services therein.

130.    Plaintiffs and Class Members communicated Sensitive Information that they intended for only Defendant to receive and that they understood Defendant would keep private and secure.

131.    Defendant's disclosure of the substance and nature of those communications to third parties, including Google, without the knowledge and informed consent of Plaintiffs and Class Members is an intentional intrusion on Plaintiffs' and Class Members' solitude or seclusion.

132.    Plaintiffs and Class Members had a reasonable expectation of privacy given Defendant's Privacy Policy and other representations.

133.    Moreover, Plaintiffs and Class Members have a general expectation that their communications regarding sensitive, highly personal information would be protected from surreptitious disclosure to third parties.

134.    Defendant's disclosure of Plaintiffs' and Class Members' Sensitive Information coupled with individually identifying information is highly offensive to the reasonable person.

135.    As a result of Defendant's actions, Plaintiffs and Class Members have suffered harm and injury including, but not limited to, an invasion of their privacy rights.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

136.    Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to compensatory and/or nominal damages.

137.    Plaintiffs and Class Members seek appropriate relief for that injury including, but not limited to, damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interests as a result of the intrusions upon their privacy.

138.    Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful and intentional nature of Defendant's actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

139.    Plaintiffs also seek such other relief as the Court may deem just and proper.

### COUNT II
### BREACH OF CONFIDENCE
*(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Ohio, Indiana, and/or Washington Subclass(es))*

140.    Plaintiffs repeat and reallege the allegations contained in paragraphs 127 through 139 as if fully set forth herein.

141.    Medical providers have a duty to their patients to keep non-public medical information completely confidential.

142.    Plaintiffs and Class Members had reasonable expectations of privacy in their communications exchanged with Defendant, including communications exchanged on Defendant's Website.

143.    Plaintiffs' and Class Members' reasonable expectations of privacy in the communications exchanged with Defendant were further buttressed by Defendant's express promises in its Privacy Policy.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

144.    Contrary to its duties as a medical provider and its express promises of confidentiality, Defendant deployed the Tracking Technologies to disclose and transmit Plaintiffs' and Class Members' Sensitive Information and the contents of their communications exchanged with Defendant to third parties.

145.    The third-party recipients included, but were not limited to, Google and other online marketers.

146.    Defendant's disclosures of Plaintiffs' and Class Members' Sensitive Information were made without their knowledge, consent or authorization, and were unprivileged.

147.    The harm arising from a breach of provider-patient confidentiality includes erosion of the essential confidential relationship between the healthcare provider and the patient.

148.    As a direct and proximate cause of Defendant's unauthorized disclosures of patient personally identifiable, non-public medical information, and communications, Plaintiffs and Class Members were damaged by Defendant's breach in that:

    a.    Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private;

    b.    Defendant eroded the essential confidential nature of the provider-patient relationship;

    c.    Defendant took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs' and Class Members' knowledge or informed consent and without compensating Plaintiffs and Class Members for the data;

    d.    Defendant's actions diminished the value of Plaintiffs' and Class Members' Sensitive Information, and

    e.    Defendant's actions violated the property rights Plaintiffs and Class Members have in their Sensitive Information.

149.    Plaintiffs and Class Members are therefore entitled to general damages for invasion of their rights in an amount to be determined by a jury and nominal damages for each independent violation. Plaintiffs are also entitled to punitive damages.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

## COUNT III
## BREACH OF FIDUCIARY DUTY
### *(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Ohio, Indiana, and/or Washington Subclass(es))*

150.    Plaintiffs repeat and reallege the allegations contained in paragraphs 140 through 149 as if fully set forth herein.

151.    In light of the special relationship between Defendant and Plaintiffs and Class Members, whereby Defendant became guardian of Plaintiffs' and Class Members' Sensitive Information, Defendant became a fiduciary by its undertaking and guardianship of the Sensitive Information, to act primarily for Plaintiffs and Class Members, (1) for the safeguarding of Plaintiffs' and Class Members' Sensitive Information; (2) to timely notify Plaintiffs and Class Members of an unauthorized disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

152.    Defendant has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of Defendant's relationship with its patients, potential patients and former patients, and in particular, to keep secure their Sensitive Information secure.

153.    Defendant breached its fiduciary duties to Plaintiffs and Class Members by disclosing their Sensitive Information to unauthorized third parties, including Google, and separately, by failing to notify Plaintiffs and Class Members of this fact.

154.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer injury and are entitled to compensatory, nominal, and/or punitive damages, and disgorgement of profits, in an amount to be proven at trial.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

## COUNT IV
## NEGLIGENCE
### *(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Ohio, Indiana, and/or Washington Subclass(es))*

155.    Plaintiffs repeat and reallege the allegations contained in paragraphs 150 through 154 as if fully set forth herein.

156.    Through using Defendant's Website, Plaintiffs and Class Members provided it with their Sensitive Information.

157.    By collecting and storing this data, Defendant had a duty of care to use reasonable means to secure and safeguard it from unauthorized disclosure to third parties, including Google.

158.    Defendant negligently failed to take reasonable steps to protect Plaintiffs' and Class Members' Sensitive Information from being disclosed to third parties, without their consent, including to Google.

159.    Defendant further negligently omitted to inform Plaintiffs and the Class that it would use their Sensitive Information for marketing purposes, or that their Sensitive Information would be transmitted to third parties, including Google.

160.    Defendant knew, or reasonably should have known, that Plaintiffs and the Class would not have provided their Sensitive Information to Defendant, had Plaintiffs and the Class known that Defendant intended to use that information for unlawful purposes.

161.    Defendant's conduct has caused Plaintiffs and the Class to suffer damages by having their highly personal, personally identifiable Sensitive Information accessed, stored, and disseminated without their knowledge or consent.

162.    Plaintiffs and Class Members are entitled to compensatory, nominal, and/or punitive damages.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

163.    Defendant's negligent conduct is ongoing, in that it still holds the Sensitive Information of Plaintiffs and Class Members in an unsafe and unsecure manner. Therefore, Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; and (ii) submit to future annual audits of those systems and monitoring procedures.

## COUNT V
## BREACH OF IMPLIED CONTRACT
### *(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Ohio, Indiana, and/or Washington Subclass(es))*

164.    Plaintiffs repeat and reallege the allegations contained in paragraphs 155 through 163 as if fully set forth herein.

165.    When Plaintiffs and Class Members provided their Sensitive Information to Defendant in exchange for services, they entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose their Sensitive Information without consent.

166.    Plaintiffs and Class Members accepted Defendant's offers and provided their Sensitive Information to Defendant.

167.    Plaintiffs and Class Members would not have entrusted Defendant with their Sensitive Information in the absence of an implied contract between them and Defendant obligating Defendant to not disclose Sensitive Information without consent.

168.    Defendant breached these implied contracts by disclosing Plaintiffs' and Class Members' Sensitive Information to third parties like Google.

169.    As a direct and proximate result of Defendant's breaches of these implied contracts, Plaintiffs and Class Members sustained damages as alleged herein.

170.    Plaintiffs and Class Members are entitled to compensatory, consequential, and/or nominal damages as a result of Defendant's breaches of implied contract.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

## COUNT VI
## UNJUST ENRICHMENT
### *(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Ohio, Indiana, and/or Washington Subclass(es))*

171.    Plaintiffs repeat and reallege the allegations contained in paragraphs 164 through 170 as if fully set forth herein.

172.    Plaintiffs plead this claim in the alternative to her breach of implied contract claim.

173.    Plaintiffs and Class Members conferred a monetary benefit on Defendant. Specifically, they provided their Sensitive Information to Defendant, which it exchanged for marketing and advertising services, including to Google, as described, *supra*.

174.    Defendant knew that Plaintiffs and Class Members conferred a benefit which Defendant accepted. Defendant profited from the Sensitive Information of Plaintiffs and Class Members by exchanging it for marketing and advertising services.

175.    In particular, Defendant enriched itself by obtaining the inherent value of Plaintiffs' and Class Members' Sensitive Information, and by saving the costs it reasonably should have expended on marketing and/or data security measures to secure Plaintiffs' and Class Members' Sensitive Information.

176.    Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the privacy of their Sensitive Information.

177.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs and Class Members, obtained by its surreptitious collection and transmission of their Sensitive Information.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

178.    If Plaintiffs and Class Members knew that Defendant had not reasonably secured their Sensitive Information, they would not have agreed to provide their Sensitive Information to Defendant.

179.    Plaintiffs and Class Members have no adequate remedy at law for this count. An unjust enrichment theory provides the equitable disgorgement of profits even where an individual has not suffered a corresponding loss in the form of money damages.

180.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer injury.

181.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from them, or to refund the amounts that Plaintiffs and Class Members overpaid for Defendant's services.

## COUNT VII
## VIOLATIONS OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA")
## 18 U.S.C. § 2511(1), *et seq.*
### *(On Behalf of Plaintiffs and the Nationwide Class or, alternatively, the Ohio, Indiana, and/or Washington Subclass(es))*

182.    Plaintiffs repeat and reallege the allegations contained in paragraphs 171 through 181 as if fully set forth herein.

183.    The ECPA protects both sending and receipt of communications.

184.    18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

185.    The transmissions of Plaintiffs' Sensitive Information to Defendant's Website qualify as "communications" under the ECPA's definition of 18 U.S.C. § 2510(12).

CLASS ACTION COMPLAINT - 42

186.    <u>Electronic Communications</u>. The transmission of Sensitive Information between Plaintiffs and Class Members and Defendant's Website with which they chose to exchange communications are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

187.    <u>Content</u>. The ECPA defines content, when used with respect to electronic communications, to "include[] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8) (emphasis added).

188.    <u>Interception</u>. The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device" and "contents … include any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(4), (8).

189.    <u>Electronical, Mechanical or Other Device</u>. The ECPA defines "electronic, mechanical, or other device" as "any device … which can be used to intercept a[n] … electronic communication[.]" 18 U.S.C. § 2510(5). The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

a.    Plaintiffs' and Class Members' browsers;

b.    Plaintiffs' and Class Members' computing devices;

c.    Defendant's web-servers; and

d.    The Pixel code deployed by Defendant to effectuate the sending and acquisition of patient communications.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

190.    By utilizing and embedding the Pixels on its Website, Defendant intentionally intercepted, endeavored to intercept, and procured another person to intercept, the electronic communications of Plaintiffs and Class Members, in violation of 18 U.S.C. § 2511(1)(a).

191.    Specifically, Defendant intercepted Plaintiffs' and Class Members' electronic communications via the Pixels, which tracked, stored, and unlawfully disclosed Plaintiffs' and Class Members' Private Information to third parties such as Google.

192.    Defendant's intercepted communications include, but are not limited to, communications to/from Plaintiffs and Class Members regarding their Sensitive Information, including the fact that Plaintiffs and Class Members sought addiction treatment services, and the results of their online addiction evaluations.

193.    By intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiffs and Class Members to third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(c).

194.    By intentionally using, or endeavoring to use, the contents of the electronic communications of Plaintiffs and Class Members, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(d).

195.    Unauthorized Purpose. Defendant intentionally intercepted the contents of Plaintiffs' and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State—namely, invasion of privacy, among others.

CLASS ACTION COMPLAINT - 44

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

196. The ECPA provides that a "party to the communication" may liable where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C § 2511(2)(d).

197. Defendant is not a party for purposes to the communication based on its unauthorized duplication and transmission of communications with Plaintiffs and the Class. However, even assuming Defendant is a party, Defendant's simultaneous, unknown duplication, forwarding, and interception of Plaintiffs' and Class Members' Sensitive Information does not qualify for the party exemption.

198. Defendant's acquisition of sensitive communications that were used and disclosed to Google was done for purposes of committing criminal and tortious acts in violation of the laws of the United States and individual States nationwide as set forth herein, including:

a.    Invasion of privacy;

b.    Breach of confidence;

c.    Breach of fiduciary duty;

d.    Violations of the Ohio Consumer Sales Practices Act;

e.    Violations of the Indiana Deceptive Consumer Sales Act; and

f.    Violations of the Washington Consumer Protection Act.

199. Defendant's conduct violated 42 U.S.C. § 1320d-6 in that it: Used and caused to be used cookie identifiers associated with specific users, including Plaintiffs and Class Members, without user authorization; and disclosed individually identifiable Sensitive Information to Google without user authorization.

200. Defendant is not exempt from ECPA liability under 18 U.S.C. § 2511(2)(d) on the ground that it was a participant in Plaintiffs' and Class Members' communications about their Sensitive Information on its Website, because it used its participation in these communications

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

to improperly share Plaintiffs' and Class Members' Private Information with Google and third-parties that did not participate in these communications, that Plaintiffs and Class Members did not know were receiving their Sensitive Information, and that Plaintiffs and Class Members did not consent to receive their Sensitive Information.

201.    As such, Defendant cannot viably claim any exception to ECPA liability.

202.    Plaintiffs and Class Members have suffered damages as a direct and proximate result of Defendant's invasion of privacy in that:

    a.   Learning that Defendant has intruded upon, intercepted, transmitted, shared, and used their Sensitive Information for commercial purposes has caused Plaintiffs and Class Members to suffer emotional distress;

    b.   Defendant received substantial financial benefits from its use of Plaintiffs' and Class Members' Sensitive Information without providing any value or benefit to Plaintiffs or Class Members;

    c.   Defendant received substantial, quantifiable value from its use of Plaintiffs' and Class Members' Sensitive Information, such as understanding how people use its Website and determining what ads people see on its Website, without providing any value or benefit to Plaintiffs or Class Members;

    d.   The diminution in value of Plaintiffs' and Class Members' Sensitive Information and/or the loss of privacy due to Defendant making such Sensitive Information, which Plaintiffs and Class Members intended to remain private, no longer private.

203.    Defendant intentionally used the wire or electronic communications to increase its profit margins. Defendant specifically used the Pixels to track and utilize Plaintiffs' and Class Members' Sensitive Information for financial gain.

204.    Defendant was not acting under color of law to intercept Plaintiffs' and the Class Members' wire or electronic communication.

205.    Plaintiffs and Class Members did not authorize Defendant to acquire the content of their communications for purposes of invading their privacy via the Pixels.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

206.    Any purported consent that Defendant may claim it received from Plaintiffs and Class Members was not valid.

207.    In sending and acquiring the content of Plaintiffs' and Class Members' communications relating to the browsing of Defendant's Website, Defendant's purpose was tortious, criminal, and designed to violate federal and state legal provisions including a knowing intrusion into a private, place, conversation, or matter that would be highly offensive to a reasonable person.

208.    As a result of Defendant's violation of the ECPA, Plaintiffs and Class Members are entitled to all damages available under 18 U.S.C. § 2520, including statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

## COUNT VII
### VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT
#### Ohio Rev. Code Ann. § 1345.01, *et seq.*
#### *(On Behalf of Plaintiff M.G. and the Ohio Subclass)*

209.    Plaintiffs repeat and reallege the allegations contained in paragraphs 182 through 208 as if fully set forth herein.

210.    The Ohio Consumer Sales Practices Act prohibits any supplier from "commit[ing] an unfair or deceptive act or practice in connection with a consumer transaction…whether it occurs before, during, or after the transaction." Ohio Rev. Code Ann. § 1345.02.

211.    Defendant is a "supplier" under Ohio Rev. Code Ann. § 1345.01(C).

212.    Defendant's advertisement of, and statements made to solicit Plaintiff M.G. and Ohio Subclass Members to contract to receive its addiction rehabilitation services through its Website, including in its Privacy Policy, are "consumer transactions" under Ohio Rev. Code Ann. § 1345.01(A).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

213.    Defendant's knowing, intentional violations of the Ohio Consumer Sales Practices Act include:

i.    Falsely promising that it would keep confidential and not disclose Plaintiff M.G. and Ohio Subclass Members' Sensitive Information;

ii.    Failing to inform Plaintiff M.G. and Ohio Subclass Members that it would provide their Sensitive Information to third parties in exchange for advertising and marketing services; and

iii.    Surreptitiously collecting and sharing Plaintiff M.G. and Ohio Subclass Members' Sensitive Information with third parties.

214.    As a result of Defendant's violations of the Ohio Consumer Sales Practices Act, Plaintiff M.G. and Ohio Subclass Members are entitled to all damages available under Ohio Rev. Code Ann. § 1345.09, including noneconomic damages of up to $5,000 per violation, equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

### COUNT VIII
### VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### ("IDCSA")
### Ind. Code Ann. § 24-5-0.5-1, *et seq.*
### *(On Behalf of Plaintiff S.R. and the Indiana Subclass)*

215.    Plaintiffs repeat and reallege the allegations contained in paragraphs 209 through 214 as if fully set forth herein.

216.    The IDCSA prohibits a "supplier" from "commit[ting] an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction…whether it occurs before, during, or after the transaction[,] includ[ing] both implicit and explicit misrepresentations." Ind. Code Ann. § 24-5-0.5-3.

217.    Defendant is a "supplier" under Ind. Code Ann. § 24-5-0.5-2(a)(2).

CLASS ACTION COMPLAINT - 48

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

218.    Defendant's advertisement of, and statements made to solicit Plaintiff S.R. and Indiana Subclass Members to contract to receive its addiction rehabilitation services through its Website, including in its Privacy Policy, are "consumer transactions" under Ind. Code Ann. § 24-5-0.5-2(a)(1).

219.    Defendant's knowing, intentional violations of the IDCSA include:

i.    Falsely promising that it would keep confidential and not disclose Plaintiff S.R. and Indiana Subclass Members' Sensitive Information;

ii.    Failing to inform Plaintiff S.R. and Indiana Subclass Members that it would provide their Sensitive Information to third parties in exchange for advertising and marketing services; and

iii.    Surreptitiously collecting and sharing Plaintiff S.R. and Indiana Subclass Members' Sensitive Information with third parties.

220.    As a result of Defendant's violations of the IDCSA, Plaintiff S.R. and Indiana Subclass Members are entitled to all damages available under Ind. Code Ann. § 24-5-0.5-4, including actual damages, statutory damages of up to $1,000 per violation, equitable or declaratory relief, punitive damages, and attorney's fees and costs.

## COUNT IX
### VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT ("WCPA")
### Wash. Rev. Code Ann. § 19.86.010, *et seq.*
### *(On Behalf of Plaintiff I.T. and the Washington Subclass)*

221.    Plaintiffs repeat and reallege the allegations contained in repeat and reallege the allegations contained in paragraphs 215 through 220 as if fully set forth herein.

222.    The WCPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Wash. Rev. Code Ann. § 19.86.020. The Washington legislature has instructed that the WCPA should be "liberally construed that its beneficial purposes may be served." Wash. Rev. Code Ann. § 19.86.920.

CLASS ACTION COMPLAINT - 49

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

223.    Defendant's knowing, intentional violations of the WCPA include:

i.    Falsely promising that it would keep confidential and not disclose Plaintiff I.T. and Washington Subclass Members' Sensitive Information;

ii.    Failing to inform Plaintiff I.T. and Washington Subclass Members that it would provide their Sensitive Information to third parties in exchange for advertising and marketing services; and

iii.    Surreptitiously collecting and sharing Plaintiff I.T. and Washington Subclass Members' Sensitive Information with third parties.

224.    As a result of Defendant's violations of the WCPA, Plaintiff I.T. and Washington Subclass Members suffered injury, including the diminished economic value of their Sensitive Information, as explained, *supra*.

225.    Defendant's violations of the WCPA were, and are, injurious to the public interest because:

i.    Defendant has repeatedly collected and shared the Sensitive Information of thousands of individuals across the country, including in the State of Washington, despite its representations to the contrary, and despite the vulnerable nature of its clientele; and

ii.    Defendant will continue to collect and disclose the Sensitive Information of all users of its Website, absent court intervention.

226.    As a result of Defendant's violations of the WCPA, Plaintiff I.T. and Washington Subclass Members are entitled to all damages available under Wash. Rev. Code Ann. § 19.86.090. including actual damages, treble damages, equitable or declaratory relief, punitive damages, and attorney's fees and costs.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

## VII   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment against Defendant as follows:

A.   an Order certifying the Nationwide Class, and Ohio, Indiana and Washington Subclasses, and appointing the Plaintiffs and their Counsel to represent the Classes;

B.   equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Sensitive Information of Plaintiffs and Class Members;

C.   injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members;

D.   an award of all damages available at equity or law, including, but not limited to, actual, consequential, punitive, statutory and nominal damages, as allowed by law in an amount to be determined;

E.   an award of attorney fees, costs, and litigation expenses, as allowed by law;

F.   prejudgment interest on all amounts awarded; and

G.   all such other and further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT - 51

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

## VIII     DEMAND FOR JURY TRIAL

2

Plaintiffs, on behalf of themselves and other members of the proposed Classes, hereby

3

demand a jury trial on all issues so triable.

4

Dated: January 30, 2025                    Respectfully submitted,

5

BRESKIN JOHNSON TOWNSEND, PLLC

6

By: _s  Brendan W. Donckers_____
   Brendan W. Donckers, WSBA #39406

7

   Cynthia J Heidelberg, WSBA #44121
   1000 Second Avenue, Suite 3670

8

   Seattle, WA 98104
   Tel: (206) 652-8660

9

   bdonckers@bjtlegal.com
   cheidelberg@bjtlegal.com

10

   Tyler J. Bean*

11

   Sonjay C. Singh*
   SIRI & GLIMSTAD LLP

12

   745 Fifth Avenue, Suite 500
   New York, New York 10151

13

   Tel: (212) 532-1091
   E: tbean@sirillp.com

14

   E: ssingh@sirillp.com

15

    *pro hac vice admission anticipated

16

17

18

19

20

21

22

23

24

CLASS ACTION COMPLAINT - 52