HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **I.T.**, **A.K.**, **S.R.**, and **M.G.**, on behalf of themselves and all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>**CHOICEPOINT LLC d/b/a CHOICEPOINT HEALTH,**<br><br>Defendant | Case No.: 2:25-CV-00193-KKE<br><br>**DEFENDANT CHOICEPOINT LLC d/b/a CHOICEPOINT HEALTH'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>NOTE FOR MOTION CALENDAR DATE: July 11, 2025<br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS


I. INTRODUCTION AND RELIEF REQUESTED ........ 1

II. PRELIMINARY STATEMENT ........ 1

III. REQUEST FOR JUDICIAL NOTICE ........ 4

IV. FACTUAL ALLEGATIONS ........ 6

A. Parties and Background. ........ 6

B. Allegations Concerning ChoicePoint's Use of Third-Party Tracking Technology. ........ 7

C. The Alleged Interception of Plaintiffs' Sensitive Information. ........ 7

D. HIPAA'S Privacy Rule and Individually Identifiable Health Information. ........ 8

E. Plaintiffs' Alleged Damages. ........ 8

V. LEGAL STANDARD ........ 9

VI. ARGUMENT AND AUTHORITIES ........ 9

A. Plaintiffs' Invasion of Privacy Claims are Subject to Dismissal. ........ 9

B. Plaintiffs Fail to State a Claim for Breach of Confidence. ........ 11

C. Plaintiffs' Breach of Fiduciary Duty Claim Fails. ........ 11

D. Plaintiffs' Have Not Alleged Damages to Support a Negligence Claim. ........ 12

E. There is No Implied Contract Between Plaintiffs and ChoicePoint. ........ 14

F. Plaintiffs Fail to State a Claim for Unjust Enrichment. ........ 17

G. Plaintiffs Have Not Plead a Violation of the ECPA. ........ 18

i. Plaintiffs Have Failed to Allege an Underlying Criminal or Tortious Purpose. ........ 19

ii. Plaintiffs' Consent Bars the ECPA Claim. ........ 21

iii. Plaintiffs Fail to Allege the Contents of Any Communications were Intercepted. ........ 21

H. Plaintiffs' State Statutory Claims are Each Subject to Dismissal. ........ 22

i. The Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. § 1345.01 et seq.) ........ 22

ii. The Indiana Deceptive Consumer Sales Act (Ind. Code Ann. § 24-5-0.5-1, et seq.) ........ 24

iii. The Washington Consumer Protection Act (Wash. Rev. Code Ann. § 19.86.010, et seq.) ("WCPA"). ........ 25

I. Plaintiffs Have Not Stated a Claim for Violations of the Washington Privacy Act. ........ 27

VII. CONCLUSION ........ 28

# TABLE OF AUTHORITIES

## Cases

*Abrego Abrego v. The Dow Chem. Co.*,
443 F.3d 676, 681 (9th Cir. 2006) ..... 5

*Amazon.Com Servs. Ltd. Liab. Co. v. Paradigm Clinical Rsch. Inst., Inc.*, 631 F. Supp. 3d 950 (W.D. Wash. 2022) ..... 5

*Beagle v. Amazon.com, Inc.*, 2024 WL 4028290 at *5, Case No. C24-0316JLR (W.D. Wash. Sept. 3, 2024) ..... 10, 27

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 555-56 (2007) ..... 9

*Buckley v. Santander Consumer USA, Inc.*,
2018 WL 1532671 (W.D. Wash. Mar. 29, 2018) ..... 10

*Castillo v. Costco Wholesale Corporation*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ..... 28

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010) ..... 5

*Cousineau v. Microsoft Corp.*,
992 F. Supp. 2d 1116 (W.D. Wash. June 22, 2012) ..... 28

*Cox v. O'Brien*,
150 Wn. App. 24, 37 (2009) ..... 18

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ..... 5

*Degel v. Majestic Mobile Manor*,
914 P. 2d 728 (1996) ..... 12

*Duffy v. Yardi Sys.*,
No. 2:23-cv-01391-RSL, 2024 U.S. Dist. LEXIS 219616 (W.D. Wash. Dec. 4, 2024) ..... 4

*Ewalt v. Gatehouse Media Ohio Holdings II, Inc.*,
2021 WL 825978 at (S.D. Ohio Mar. 4, 2021) ..... 23

*Ferron v. Zoomego*,
276 Fed. Appx. 473, 474 (6th Cir. 2008) ..... 23



DarrowEverett LLP, One SE Third Ave.
Miami, FL 33131

*Fisher v. Dep't of Health*,
106 P.3d 836, 840-41 (Wash. Ct. App. 2005)........ 10

*Fleming v. Pickard*,
581 F. 3d. 922. 925 (9th Cir. 2009) ........ 9

*Gray v. Amazon.com, Inc*.
653 F. Supp. 3d 847, 857-59 (W.D. Wash. Jan. 27, 2023)........ 26

*Hartman v. Department of Children Youth and Families*,
2024 WL 32553283 Case No. C24-0554JLR (W.D. Wash. July 1, 2024)........ 9

*In re MCG Health Data Security Issue Litigation*,
2023 WL 3057428 Case No. 2:22-CV-849-RSM-DWC (Mar. 27, 2023)........ 12, 17, 25

*In re Zynga Privacy Litigation*,
750 F. 3d 1098, 1108 (9th Cir. 2014) ........ 21

*Johnson v. Nasi*,
309 P.2d 380 (1957)........ 14

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)........ 20

*Knievel v. ESPN,*
393 F. 3d 1068, 1076 (9th Circ. 2005)........ 4

*Lakes v. Ubisoft, Inc*.,
2025 WL 1036639 at *5 (N.D. Cal. Apr. 2, 2025) ........ 21

*Leonard v. McMenamins, Inc*.,
No C22-94, 2024 WL 4188974 (W.D. Wash. Sept. 13, 2024)........ 13

*Leslie v. Fidelity Nat. Title Ins. Co*.,
598 F. Supp. 2d 1176 (W.D. Wash. 2009)........ 14

*Mayhall v. Amazon Web Servs*.,
No. C21-1473-TL-MLP, 2022 U.S. Dist. (W.D. Wash., 2022)........ 5

*McKee v. General Motors Company*,
601 F. Supp. 3d 901, 908-09 (W.D. Wash. May 5, 2022)........ 28

*Nemykina v. Old Navy, LLC*,
461 F. Supp. 3d 1054 (W.D. Wash. 2020)........ 26

*Nienaber v. Overlake Hospital Medical Center*,
733 F. Supp. 3d 1072 (W.D. Wash. May 13, 2024) .......... passim

*Parrino v. FHP, Inc.*,
146 F. 3d 699 (9th Cir. 1998) .......... 5

*Private Client Fiduciary Corp. v. Chopra*,
2023 WL 2372917 Case No. 22-CV-00436-LK (W.D. Wash. Mar. 6, 2023) .......... 11

*Reeves v. PharmaJet, Inc.*,
846 F. Supp. 2d 791 (N.D. Ohio Feb. 3, 2012) .......... 24

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) .......... 9

*SMC Corp. v. Peoplesoft USA, Inc.*,
2004 WL 2538641 (N.D. Ind. Oct. 12, 2004) .......... 25

*Smith v. Smith & Nephew, Inc.*,
5 F. Supp. 3d 930 (W.D. Ohio Mar. 10, 2014) .......... 23

*Snapp v. Burlington Northern Santa Fe Ry.*,
No. C10-5577, 2012 WL 3157137 at *4-5 (W.D. Wash. Aug. 3, 2012) .......... 11

*Sprewell v. Golden State Warriors*,
266 F. 3d 979 (9th Cir. 2001) .......... 9

*Steinle v. City & Cty. of S.F.*,
919 F. 3d 1154 (9th Cir. 2019) .......... 4

*United States v. Ritchie*,
342 F. 3d 903 (9th Cir. 2003) .......... 4

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024) .......... 13, 19

*Wilson v. Playtika, Ltd.*,
349 F. Supp. 3d 1028 (W.D. Wash. 2018) .......... 5

*Wilson v. PTT, LLC*,
351 F. Supp. 3d 1325 (W.D. Wash. 2018) .......... 5

*Young v. Harbor Motor Works, Inc.*
2009 WL 187793 (N.D. Ind. Jan. 27, 2009) .......... 25

*Young v. Toyota Motor Sales, U.S.A.*,
196 Wash. 2d 310, 322, 472 P. 3d 990 (2020)........................................................................ 26

**Statutes and Rules**

Electronic Communications Privacy Act (18 U.S.C. § 2510 et. seq.)………...……3, 18, 19, 20, 21, 22

Fed. R. Civ. P. 9(b)…………………………………………………………...1, 3, 22, 25, 26, 27

Fed. R. Civ. P. 12(b)(6)………………………………………………………………………..1, 9, 29

Fed. R. Evid. 201(b)…………………………………………………………………………………5

Indiana Deceptive Consumer Sales Act (Ind. Code Ann. § 24-5-0.5-1, et seq.)………………..24, 25

Ind. Code § 24-5-0.5-3(a)…………………………………………………………………………..24

Ind. Code § 24-5-0.5-2(a)(1)………………………………………………………………………..25

Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. § 1345.01, et seq.)…...…...………23, 24

Ohio Rev. Code Ann. § 1345.02(A)…………………………………………………………...23

Washington Privacy Act (RCW § 9.73.030)…...………………………………………………27, 28

Washington Consumer Protection Act (Wash. Rev. Code Ann. § 19.86.010, et seq.)…………26, 27



DarrowEverett LLP, One SE Third Ave.
Miami, FL 33131

## I. INTRODUCTION AND RELIEF REQUESTED

Defendant ChoicePoint LLC d/b/a ChoicePoint Health ("ChoicePoint") hereby moves to dismiss the Plaintiffs' Amended Class Action Complaint, in whole or in part, for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) and, to the extent applicable, for failure to plead with particularity under Fed. R. Civ. P. 9(b) ("Rule 9(b)"). For the reasons stated in Defendant's Motion to Dismiss Plaintiffs' Original Complaint (Dkt. No. 9) and those stated herein, Plaintiffs' Amended Complaint fails to provide sufficient allegations to remedy the deficiencies of the Original Complaint and as a result, the Amended Complaint should be dismissed in its entirety with prejudice.

## II. PRELIMINARY STATEMENT

This case is a putative class action in which Plaintiffs, proceeding under anonymity, allege that ChoicePoint improperly and illegally disclosed their sensitive and personal information relating to the Plaintiffs' purported substance addictions to third parties including Alphabet, Inc. ("Google") and Meta Platforms, Inc. ("Facebook") through online tracking tools. Each named Plaintiff provided information concerning their substance abuse and addiction histories to ChoicePoint as part of a free online screening tool offered on ChoicePoint's website ("the Website"). Plaintiffs allege that they learned of ChoicePoint's alleged disclosure of this sensitive information to Google and Facebook when they began receiving targeted online advertisements for addiction treatment.

Plaintiffs' allegations fall short and fail to state cognizable legal claims as they do not allege that ChoicePoint disclosed any actual "Sensitive Information" to any third party, including but not limited to Google and Facebook. A closer examination of Plaintiffs' allegations reveals that the only information that may have been gathered and shared by ChoicePoint through online tracking tools were the URL for the resulting webpage Plaintiffs' were directed to following the completion of the

online screening tool, and nothing in Plaintiffs' Complaint or the supporting documentation alleges that the actual substance of the information provided by Plaintiffs as part of the online screening tool was disclosed to any third party. The URL ChoicePoint allegedly shared with Google and Facebook only contained the results of this free online screening tool, and did not include the Plaintiffs' names or any other personal identifying information.

While Plaintiffs allege they began receiving targeted advertisements for addiction treatment services after completing the free online screening tool, they fail to allege that they received these advertisements as a direct result of ChoicePoint's sharing of their Sensitive Information with Google and/or Facebook (as opposed to these advertisements resulting from Google searches or other internet browsing by Plaintiffs that did not involve ChoicePoint's Website). Without any such causation allegations, Plaintiffs cannot, and do not, allege that any targeted advertisements they may have received were a direct result of any alleged wrongdoing by ChoicePoint. Moreover, Plaintiffs do not allege that they did not disclose this Sensitive Information to any third parties other than ChoicePoint.

The Plaintiffs' claims also fail as a matter of law for a variety of other reasons. Plaintiffs do not allege that their Sensitive Information was widely published by ChoicePoint, only that it was shared with Google and Facebook and resulted in Plaintiffs receiving targeted advertisements for addiction services. For that reason, Plaintiffs' invasion of privacy claim fails. By simply visiting ChoicePoint's Website and filling out an online addiction survey, Plaintiffs fail to allege any business transaction or relationship between Plaintiffs and ChoicePoint pursuant to which Plaintiffs conferred or agreed to confer any benefit upon ChoicePoint, and without such allegations, Plaintiffs cannot maintain claims for unjust enrichment and breach of implied contract. Similarly, Plaintiffs fail to make allegations that would give rise to any duties owed by ChoicePoint to support either a

negligence or breach of fiduciary duty claim, and each claim therefore fails as a matter of law. Finally, Plaintiffs consented to any alleged sharing of their Sensitive Information through their acceptance of ChoicePoint's Terms of Use and Privacy Policy, which explicitly disclose the information the Website collects and how such information is used by ChoicePoint.

Plaintiffs also bring claims under Ohio, Indiana, and Washington's state consumer protection and privacy statutes. Each of these consumer protection and privacy statutes require Plaintiffs to allege that ChoicePoint committed an "unfair and deceptive act" – allegations which necessarily sound in fraud and are subject to the heightened pleading standard of Rule 9(b). As explained further below, Plaintiffs have failed to plead an unfair or deceptive act by ChoicePoint with Rule 9(b)'s required particularity, and for this reason each of their state statutory claims are subject to dismissal. Plaintiffs' claim for violations of the Electronic Communications Privacy Act ("ECPA") is similarly subject to dismissal for failing to allege an underlying tortious or criminal act in connection with the alleged interception of the contents of any communication. While Plaintiffs' Amended Complaint attempts to base the ECPA claim on alleged underlying violations of HIPAA, the allegations concerning Plaintiffs' interactions with a publicly accessible website are insufficient to establish an independent tortious or criminal purpose separate from the alleged interception.

Finally, and perhaps most importantly, several of Plaintiffs' claims fail for lack of any cognizable damage. Plaintiffs do not allege that their Sensitive Information was widely published or that they have suffered any direct personal or reputational harm because of any such publication. Plaintiffs' own allegations acknowledge that the only parties that were provided with Plaintiffs' Sensitive Information were ChoicePoint, Facebook, and Google. Plaintiffs' theory of diminution of value of their Sensitive Information, which assumes Plaintiffs would have sought to somehow monetize this Sensitive Information themselves, has been rejected by numerous Courts and



DarrowEverett LLP, One SE Third Ave.
Miami, FL 33131

undercuts Plaintiffs' allegations that they intended to keep their Sensitive Information private. Plaintiffs cannot use contradictory allegations to support their substantive allegations on one hand by alleging that they intended to keep their Sensitive Information private, while on the other attempting to satisfy their obligation to plead damages by alleging that they would have monetized their Sensitive Information but for ChoicePoint's actions. However, these allegations fall short of meeting the damages pleading requirements, as there are no allegations that ChoicePoint's actions have impaired Plaintiffs' ability to monetize their Sensitive Information.

For these reasons, and as further explained below, Plaintiffs Amended Complaint fails to state any valid legal claims and ChoicePoint's Motion to Dismiss should be granted in its entirety.

## III. <u>REQUEST FOR JUDICIAL NOTICE</u>

Pursuant to Federal Rule of Evidence 201, ChoicePoint respectfully requests that the Court take judicial notice of the ChoicePoint Website (www.choicepointhealth.com) (the "Website") including the terms of use and privacy policies governing cookies, pixels, and data sharing, submitted in support of ChoicePoint's Motion to Dismiss. Plaintiffs' Complaint relies on highly selective portions of ChoicePoint's Website in several factual allegations and claims. *See*, *e.g*., AC ⁋⁋ 3, 6, 10, 81-86.[1] ChoicePoint seeks to introduce additional portions of its publicly available Website, of which the Court may properly take judicial notice, so that the Court has a complete

---

[1] In the alternative, the Court may and should consider the Website's Privacy Policy as incorporated by reference into the Complaint. *See Duffy v. Yardi Sys*., No. 2:23-cv-01391-RSL, 2024 U.S. Dist. LEXIS 219616 (W.D. Wash. Dec. 4, 2024) . A document is incorporated by reference if the plaintiff "refers extensively" to it or if the document "forms the basis of the plaintiff's claim." *Steinle v. City & Cty. of S.F.*, 919 F. 3d 1154, 1162 (9th Cir. 2019) (quoting *United States v. Ritchie*, 342 F. 3d 903, 908 (9th Cir. 2003)). Even if the plaintiff "does not explicitly allege the contents of [a particular] document in the complaint," a document may still be deemed incorporated in a complaint by reference where "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document[.]"*Knievel v. ESPN,* 393 F. 3d 1068, 1076 (9th Circ. 2005) . The Court may consider the Privacy Policy (Exhibit A) under the incorporation by reference doctrine because the documents form the basis of Plaintiffs' Amended Complaint and Plaintiffs explicitly relies on and refers to this document. *See* AC ⁋⁋ 81-83.

picture of what the user consents to, and the policies they are provided with and agree to. *See Mayhall v. Amazon Web Servs*., No. C21-1473-TL-MLP, 2022 U.S. Dist. (W.D. Wash., 2022) (taking judicial notice where an Agreement appeared on a publicly available website and the provided facts were undisputed); *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) (taking judicial notice of a list of approved vendors displayed publicly on websites).

Judicial notice is appropriate for facts "not subject to reasonable dispute" that are either generally known within the jurisdiction of the trial court or are capable of accurate and ready determination by resorting to "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts routinely take judicial notice of publicly available documents and publicly available articles or other news releases. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, [the court] may consider . . . matters of public record").

As a general matter, a court may take judicial notice of a "publicly accessible" website to establish the existence of terms. *See Wilson v. Playtika, Ltd*., 349 F. Supp. 3d 1028 (W.D. Wash. 2018); see also *Wilson v. PTT, LLC*, 351 F. Supp. 3d 1325 (W.D. Wash. 2018). Federal courts may take judicial notice to prevent plaintiffs from "deliberately omitting references to documents upon which their claims are based." *See Parrino v. FHP, Inc*., 146 F. 3d 699, 705-706 (9th Cir. 1998) (superseded by statute on other grounds as stated in *Abrego Abrego v. The Dow Chem. Co*., 443 F.3d 676, 681 (9th Cir. 2006)); *see also Amazon.Com Servs. Ltd. Liab. Co. v. Paradigm Clinical Rsch. Inst., Inc*., 631 F. Supp. 3d 950 (W.D. Wash. 2022) (taking judicial notice of the existence of online purchase orders integral to the complaint). This court should take judicial notice of the ChoicePoint Website, and the policies publicly available on that Website including ChoicePoint's

Privacy Policy and Terms of Use.[2] These documents are publicly available, and Plaintiffs have pointed to the Website to form the basis of several allegations. *See* Amended Complaint ("AC") ¶¶ 3, 6, 10, 81-86.

Accordingly, ChoicePoint respectfully requests that the Court take judicial notice of Exhibits A and B to the Declaration of Gabriel Saade (Website's Privacy Policy and Terms of Use).

## IV. FACTUAL ALLEGATIONS[3]

### A. PARTIES AND BACKGROUND.

Plaintiffs are four individuals, each proceeding anonymously, and are citizens of the states of Washington, Indiana, Ohio, and Missouri. *See* AC ¶¶ 14-34. Each Plaintiff separately alleges the he or she visited the Website, requested an appointment for addiction services treatment, and subsequently completed ChoicePoint's free online screening tool, and as a result each Plaintiff's Sensitive Information was tracked and disclosed. *Id*. Plaintiffs allege that they never authorized ChoicePoint to disclose any communications with ChoicePoint through the Website to third parties, including the Sensitive Information concerning Plaintiffs' substance addiction histories. *Id*.

Each Plaintiff further alleges that after visiting the Website and providing the Sensitive Information, he or she began seeing targeted advertisements for addiction treatment services. *Id*. Plaintiffs do not allege any of their individual results of the free online screening tool, and do not allege that they did not disclose their Sensitive Information elsewhere on the Internet.

ChoicePoint is a medical provider specializing in addiction treatment services and offers a Website that allows visitors to request appointments for addiction treatment services and complete a free online assessment of the severity of their addiction. *See* AC ¶ 9. Plaintiffs allege that

[2] The Terms of Use also contains waivers of the right to a jury trial and to participate in a class action, which ChoicePoint reserves the right to raise at the appropriate time. *See* Ex. B.
[3] All factual allegations are taken from Plaintiffs' Amended Class Action Complaint ("AC").

ChoicePoint installed Google and Facebook's Tracking Tools on its Website. *See* AC ¶ 9. Plaintiffs each allege that they visited ChoicePoint's Website, completed the online screening, which was recorded and then transmitted to Google and Facebook through these Tracking Tools. *See* AC ¶ 3.

### B. Allegations Concerning ChoicePoint's Use of Third-Party Tracking Technology.

Plaintiffs make considerable allegations concerning Google's and Facebook's data tracking and online advertising practices, including through third-party tracking software used by website operators. *See* AC ¶¶ 41-72. Plaintiffs allege that ChoicePoint installed this pixel tracking tools on the Website that allowed ChoicePoint to capture and transmit information it obtained from Website visitors. *See* AC ¶¶ 73-74. Plaintiffs further allege that ChoicePoint shared the URL of the specific pages of the Website visited by Plaintiffs, which included information that the user completed a free prescreening, the results of the survey, and the fact that the visitor had requested an appointment through the Website. *See* AC ¶¶ 76-78.

### C. The Alleged Interception of Plaintiffs' Sensitive Information.

Plaintiffs allege that ChoicePoint intentionally configured the Google and Facebook Pixels on the Website to transmit Plaintiffs' Sensitive information to Google and Facebook, and that the information requested and transmitted included both the fact that the user completed a "Free Pre-Screening" as well as the results of that screening, each of which is included in the URL that the user is directed to following completion of the screening. *See* AC ¶¶ 75-76. Plaintiffs' Complaint includes a screenshot of a user's (not specifically alleged to be any of the Plaintiffs) results and URL which revealed the user's addiction to be determined as "extremely severe." *See* AC ¶¶ 75-77. Plaintiffs allege that ChoicePoint purposefully configured the Google and Facebook pixels on its Website to collect and transmit this sensitive information, including the results of user's online

addiction evaluations. *See* AC ¶¶ 79-80. Plaintiffs do not allege that any of the specific information they submitted in response to questions on ChoicePoint's online screening tool was provided to any third party. Instead, the allegations only content that the URLs transmitted to Google and Facebook contained their results of the online screening tool and the fact that the user submitted an appointment request. *See* AC ¶¶ 76-79.

### D. HIPAA'S PRIVACY RULE AND INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION.

The Amended Complaint incorporates new allegations concerning HIPAA's "Standards for Privacy of Individually Identifiable Health Information," known as the Privacy Rule, and the requirements on how health care providers must safeguard and protect Private Information. *See* AC ¶ 100. Plaintiffs allege that ChoicePoint failed to comply with this Privacy Rule and certain other HIPAA safeguard regulations by providing individually identifiable health information, including the results of the free online screening tool, to third parties without Plaintiffs' consent. *See* AC ¶¶ 114-116. Plaintiffs further allege that certain tracking technologies on unauthenticated webpages may have access to protected health information ("PHI") in certain circumstances where there is a user registration or login for the patient portal or there are pages that address specific symptoms or health conditions. *See* AC ¶ 124.

### E. PLAINTIFFS' ALLEGED DAMAGES.

Plaintiffs allege that they have suffered various types of injuries as a result of ChoicePoint's conduct, including (i) invasion of privacy; (ii) lack of trust in communicating with online service providers; (iii) emotional distress and heightened concerns related to the release of Sensitive Information to third parties, (iv) lost benefit of the bargain; (v) diminution of value of the Sensitive

Information; (vi) statutory damages; and (vii) continued and ongoing risk to their Sensitive Information. *See* AC ¶ 12.

## V. LEGAL STANDARD

A motion to dismiss for failure to state a claim should be granted when there is no cognizable legal theory to support the claim or where the complaint lacks the required factual allegations to state a facially plausible claim for relief. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all allegations in the complaint as true and view them in the light most favorable to the non-moving party. *See Fleming v. Pickard*, 581 F. 3d. 922. 925 (9th Cir. 2009). To survive a motion to dismiss, a plaintiff must plead facts sufficient to support a "plausible" cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Although the Court is required to draw all reasonable inferences in favor of the plaintiffs, it is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

## VI. ARGUMENT AND AUTHORITIES

### A. Plaintiffs' Invasion of Privacy Claims are Subject to Dismissal.

To state a cognizable claim for invasion of privacy, Plaintiffs must allege that ChoicePoint intentionally publicized information about the Plaintiffs' private lives that (a) would be highly offensive to a reasonable person; and (b) are not of legitimate concern to the public. *See Hartman v. Department of Children Youth and Families*, 2024 WL 32553283 at *10, Case No. C24-0554JLR (W.D. Wash. July 1, 2024) (dismissing invasion of privacy claim for failing to allege information at issue was publicly disclosed). "Publicity" means "communication to the public at large so the

matter is substantially certain to become public knowledge." *See Fisher v. Dep't of Health*, 106 P.3d 836, 840-41 (Wash. Ct. App. 2005). "[C]ommunication to a single person or a small group does not qualify. *Id*. at 841. Courts have found that alleged disclosures to limited third parties for purposes of promotional offers and targeted advertisements do not constitute public disclosure to support a claim for invasion of privacy. *See Beagle v. Amazon.com, Inc*., 2024 WL 4028290 at *5, Case No. C24-0316JLR (W.D. Wash. Sept. 3, 2024) (dismissing claim for invasion of privacy without leave to amend). An invasion of privacy based on intrusion upon seclusion cannot survive without allegations of deliberate intrusions into plaintiffs' private affairs and broad publication of such sensitive information. *See Buckley v. Santander Consumer USA, Inc*., 2018 WL 1532671 at *7 (W.D. Wash. Mar. 29, 2018) (dismissing claim for intrusion upon seclusion).

Here, Plaintiffs allege that ChoicePoint shared Plaintiffs' Sensitive Information with third parties, including Facebook and Google. *See* AC ¶¶ 83-86. Each Plaintiff alleges that he or she became aware of this alleged conduct through seeing targeted online advertisements for addiction treatment services. *See* AC ¶¶ 17, 22, 27, 33. There are no allegations that ChoicePoint published the Sensitive Information to the public at large or that the Sensitive Information otherwise became public knowledge. Moreover, Plaintiffs do not even allege that the results of their individual online screening surveys were, or how publicizing such information would be highly offensive to a reasonable person. Specifically, each Plaintiff only alleges that they completed ChoicePoint's online screening but does not allege what the results of each Plaintiff's assessment. *See* AC ¶¶ 14, 19, 24, 30. Instead, Plaintiffs cite to an unknown user's online screening result of "extremely severe." *See* AC ¶ 75.

If Plaintiffs' online screening results were that they had no addiction at all, the disclosure of such information would not be considered highly offensive to a reasonable person. Further, even if



DarrowEverett LLP, One SE Third Ave.
Miami, FL 33131

the results of each Plaintiffs' online screening were "extremely severe" (which they have not alleged) Plaintiffs have failed to allege how the publication of such results would be highly offensive where those results were not connected with the Plaintiffs' names or other personally identifiable information. For this reason, Plaintiffs have not stated a claim for invasion of privacy, and **Count I** should be dismissed.

### B. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONFIDENCE.

Washington does not recognize breach of confidence as a common law cause of action. *See Nienaber v. Overlake Hospital Medical Center*, 733 F. Supp. 3d 1072, 1090 (W.D. Wash. May 13, 2024) (citing *Snapp v. Burlington Northern Santa Fe Ry.*, No. C10-5577, 2012 WL 3157137 at *4-5 (W.D. Wash. Aug. 3, 2012) (dismissing breach of confidence claim on the basis that it is not a recognized cause of action under Washington law). For this reason, the Court should dismiss Plaintiffs' claim for Breach of Confidence, **Count II**, with prejudice.

### C. PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM FAILS.

A claim for breach of fiduciary duty requires a plaintiff to establish (1) existence of a duty owed; (2) breach of that duty; (3) resulting injury; and (4) that the claimed breach was the proximate cause of the injury. *See Private Client Fiduciary Corp. v. Chopra*, 2023 WL 2372917 at *6, Case No. 22-CV-00436-LK (W.D. Wash. Mar. 6, 2023). Plaintiffs claim that based on the alleged special relationship created between Plaintiffs and ChoicePoint when Plaintiffs provided their Sensitive Information, ChoicePoint was conferred with fiduciary duties to keep the Sensitive Information secure. *See* AC ¶¶ 180.

However, Plaintiffs do not allege that ChoicePoint was a healthcare provider to Plaintiffs or that there was a doctor-patient relationship or other special relationship that would give rise to fiduciary duties owed by ChoicePoint. *Compare Nienaber v. Overlake Hospital Medical Center*,

2025 WL 692097 at * 12 (W.D. Wash. Mar. 4, 2025) (holding that plaintiff stated a valid claim for breach of fiduciary duty against her healthcare provider where healthcare provider encouraged plaintiff to use the website to receive healthcare services).

Here, Plaintiffs allege that they visited ChoicePoint's public-facing website, available to anyone on the internet, and voluntarily submitted their Sensitive Information as part of the Website's addiction evaluation survey. *See* AC ¶¶ 10, 74-75. There is no allegation that Plaintiffs ever became customers or patients of ChoicePoint but nonetheless they allege that by simply visiting the Website a fiduciary relationship was created. As Plaintiffs have failed to establish that ChoicePoint owed them a fiduciary duty, **Count III**, should be dismissed.

### D. Plaintiffs' Have Not Alleged Damages to Support a Negligence Claim.

To state a claim for negligence under Washington law, Plaintiffs must adequately allege (1) the existence of a duty to the plaintiff; (2) a breach of that duty; (3) a resulting injury; and (4) the breach as the proximate cause of the injury. *See In re MCG Health Data Security Issue Litigation*, 2023 WL 3057428 at *2, Case No. 2:22-CV-849-RSM-DWC (Mar. 27, 2023) (citing *Degel v. Majestic Mobile Manor*, 914 P. 2d 728, 731 (1996) (dismissing negligence claim for failure to allege that defendant owed a duty to plaintiff).

Under Washington law, actual loss or damage is an essential element to state a cause of action for negligence. *See Nienaber v. Overlake Hospital Medical Center*, 2025 WL 692097 at *7 (W.D. Wash. Mar. 4, 2025) (dismissing negligence claim where plaintiff alleged loss of value to her private information). Loss of privacy alone with respect to highly sensitive information is insufficient to maintain a negligence claim, and Washington courts have dismissed negligence claims in the data privacy context where the plaintiff has not alleged any direct financial losses or that their identities have been stolen, such as the opening of fraudulent credit card accounts or

fraudulent credit reports being obtained with the plaintiff's personal information. *Id*. at *7 (citing *Leonard v. McMenamins, Inc*., No C22-94, 2024 WL 4188974 at *6 (W.D. Wash. Sept. 13, 2024). Courts have held that there is no duty requiring healthcare providers who maintain websites to protect website visitors from having their interactions with a website logged and shared for advertising purposes. *See Williams v. TMC Health*, 2024 WL 4364150 at *6-7 (D. Ariz. Sept. 30, 2024) (dismissing negligence claim for failure to sufficiently allege that defendants owed a duty). Likewise, here, Plaintiffs have failed to establish any special relationship (besides the conclusory allegation that one exists) that would confer any duties on ChoicePoint to support a negligence claim.

Plaintiffs' alleged damages consist of a "diminution in value" of their private information, which they have failed to adequately plead. For a plaintiff to properly state a diminution in value of their private information, they must allege (1) the existence of a market for the private information, and (2) an impairment of plaintiff's ability to participate in that market. *Id*. at *8. Plaintiffs have not alleged any direct financial losses arising from ChoicePoint's conduct. While Plaintiffs have made allegations concerning the market for and value of their Sensitive Information, they fail to make any allegations that their ability to participate in a market for their Sensitive Information was somehow impaired by ChoicePoint's actions. *See* AC ¶¶ 94-99, 231. In support of their claim for diminution of value of their Sensitive Information, Plaintiffs cite to various companies that allegedly have products that compensate consumers for their digital information, included a Facebook program that ended in 2019. *See* AC ¶¶ 96-97. Missing are any allegations that Plaintiffs intended to monetize their Sensitive Information independently, and that ChoicePoint's actions impaired their ability to participate in such a market.

For Plaintiffs to make such allegations, it would cut against their allegations that they intended to keep their Sensitive Information private and have been harmed by ChoicePoint's alleged disclosure of the Sensitive Information to third parties. In *Nienaber*, the Court similarly rejected amended complaint allegations seeking to establish damages on the basis of diminution of value of private information, stating that it was "skeptical that Plaintiff will be able to establish her intent to participate in the market for her private information." *See* 2025 WL 692097 at *8 (W.D. Wash. Mar. 4, 2025). The Court should make a similar finding here based on Plaintiffs' allegations that they intended to keep their Sensitive Information private combined with the lack of any allegations concerning Plaintiffs' intent to monetize their Sensitive Information. For these reasons, Plaintiffs have not adequately plead damages to support their negligence claim and **Count IV** should be dismissed.

### E. THERE IS NO IMPLIED CONTRACT BETWEEN PLAINTIFFS AND CHOICEPOINT.

For a plaintiff "[t]o prevail on a breach of implied contract claim, plaintiff must demonstrate that [an] implied contract exists based on the acts of the parties involved and in light of the surrounding circumstances." *See Nienaber*, 733 F. Supp. 3d at 1090 (quoting *Leslie v. Fidelity Nat. Title Ins. Co.*, 598 F. Supp. 2d 1176, 1184 (W.D. Wash. 2009) (dismissing breach of implied contract claim).

In the *Nienaber* case, the plaintiff alleged that she "entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose their Private Information without consent." *Id*. The Court found those allegations insufficient to allege the existence of an implied contract, as any services must be rendered under circumstances that indicate the person rendering them expected to be paid, and that the recipient of the services expected, or should have expected, to pay for them. *Id*. (citing *Johnson v. Nasi*, 309 P.2d 380 (1957)).

Here, Plaintiffs similarly allege that Plaintiffs and Defendants entered into an implied contract pursuant to which Defendants agreed to safeguard and not disclose Plaintiffs' Sensitive Information without their consent - and that they would not have provided their Sensitive Information in the absence of such an implied contract. *See* AC ¶¶ 165-167. However, these allegations are contradicted by the Website's Privacy Policy that discloses the information the Website collects and how it is used, which Plaintiffs agreed and consented to by visiting the Website, and which Plaintiffs refer to and incorporate by reference into their Complaint. Plaintiffs omit from their Complaint allegations that the Website's Privacy Policy discloses precisely how personal information is automatically collected from Website visitors:

> **How we collect personal information**
>
> **Information we collect automatically:**
>
> We use cookies to collect some user information automatically that may include information about your IP address, browser type, geographic location, device type, and other technical information. Collecting this information enables us to better understand the visitors who come to our Site, where they come from, and what content on our Site is of interest to them

Moreover, the Website's Privacy Policy specifically discloses how information gathered was utilized to send visitors targeted advertisements based on their online activities:



DarrowEverett LLP, One SE Third Ave.
Miami, FL 33131

> **Policy For Retargeting**
>
> We use Google Analytics' 3rd-party audience data such as age, gender, and interests to better understand the behavior of our customers and work with companies that collect information about your online activities to provide advertising targeted to suit your interests and preferences. For example, you may see certain ads on this website or other websites because we contract with Google and other similar companies to target our ads based on information we or they have collected, including information that was collected through automated means (such as cookies and web beacons).

Finally, the Privacy Policy discloses the use of third-party vendor remarketing tracking cookies, including the Google AdWords tracking cookie, and the fact that those third-party vendors place tracking cookies on web browsers to serve ads based on past visits to the Website.

> ChoicePoint uses 3rd party vendor remarketing tracking cookies, including the Google Adwords tracking cookie. This means we will continue to show ads to you across the internet, specifically on the Google Content Network (GCN). As always we respect your privacy and are not collecting any identifiable information through the use of Google's or any other 3rd party remarketing system.
> The third-party vendors, including Google, whose services we use – will place cookies on web browsers in order to serve ads based on past visits to our website. – Third party vendors, including Google, use cookies to serve ads based on a user's prior visits to your website. This allows us to make special offers and continue to market our services to those who have shown interest in our service.

*See* Privacy Policy, Ex. A.

The Privacy Policy's disclosures and Plaintiffs' consent to the same through utilizing the Website and its free online screening tool, directly contradicts Plaintiffs' allegations that Plaintiffs and ChoicePoint entered into an implied contract by which ChoicePoint agreed to safeguard Plaintiffs Sensitive Information and not disclose it without consent. *See* AC ¶ 165. The Court should take judicial notice of the Privacy Policy and its terms, and in doing so find that Plaintiffs consented to the Privacy Policy and cannot allege an implied contract that is contradictory to the Privacy Policy's terms.

Plaintiffs also do not allege that Defendant expected to be paid for safeguarding Plaintiffs' Sensitive Information, or that Plaintiffs paid or expected to pay Defendant for safeguarding their Sensitive Information. The online assessment tool was free to complete, and Plaintiffs do not allege they purchased any services from ChoicePoint. *See* AC ¶ 75. Without any allegation they made any payments to ChoicePoint for use of its public website or that ChoicePoint had an expectation of payment for such use, Plaintiffs cannot maintain a claim for breach of implied contract. *See Nienaber v. Overlake Hospital Medical Center*, 2025 WL 692097 at *10 (W.D. Wash. Mar. 4, 2025) (dismissing breach of implied contract claim).

For these reasons, Plaintiffs have not and cannot allege the existence of an implied contract, and **Count V** should be dismissed with prejudice.

### F. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT.

To state a claim for unjust enrichment, Plaintiffs must plead sufficient facts to show that Defendant received a benefit at Plaintiffs' expense and that the circumstances it would be unjust for Defendant to retain the payment without payment. *See In re MCG Health Data Security Issue*

*Litigation*, 2023 WL 3057428 at *5-6 (internal citations omitted) (dismissing unjust enrichment claim for plaintiff's failure to allege any transaction with defendant). Simply alleging that a party has profited at the expense of another is insufficient to trigger liability under an unjust enrichment theory; rather, the enrichment must relate to two parties to a transaction. *Id*. (citing *Cox v. O'Brien*, 150 Wn. App. 24, 37 (2009).

Likewise, here, Plaintiffs have failed to allege the existence of any transaction between Plaintiffs and Defendant. Plaintiffs' unjust enrichment claim is supported by the allegation that Defendant obtained Plaintiffs' Sensitive Information through "surreptitious collection." *See* AC ¶¶ 177. This allegation undercuts the existence of any transaction between Plaintiffs and Defendant, as the essence of Plaintiffs' Complaint allegations are that Defendant collected and disclosed their Sensitive Information without their knowledge or consent. Moreover, Plaintiffs have not alleged that they ever paid any monies to Defendant in connection with the Plaintiffs' use of Defendant's Website and Services. *See Nienaber*, 733 F. Supp. 3d at 1093-94 (dismissing unjust enrichment claim for failure to properly allege a monetary benefit was conferred on defendant). Plaintiffs acknowledge that the online assessment was free to complete and do not allege that they ever otherwise purchased services from ChoicePoint. *See* AC ¶ 75. Plaintiffs' allegations do not support the existence of any transaction between the parties and thus cannot support a claim for unjust enrichment. Accordingly, Plaintiffs' unjust enrichment claim, **Count VI,** should be dismissed with prejudice.

### G. PLAINTIFFS HAVE NOT PLEAD A VIOLATION OF THE ECPA.

A valid claim under the Electronic Communications Privacy Act ("ECPA") requires allegations that the defendant intentionally intercepted the contents of an electronic communication, using a device. *See Nienaber*, 2025 WL 692097 at *12-13 (dismissing Plaintiffs' ECPA claim). In



DarrowEverett LLP, One SE Third Ave.
Miami, FL 33131

doing so, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording or interception itself. *Id*. (internal citations omitted). While Plaintiffs attempt to characterize Plaintiffs' other claims as the independent tortious purpose, their own allegations clearly demonstrate that their position that ChoicePoint allegedly utilized the Pixels to record its Website's visitors Sensitive Information, which ChoicePoint then provided to Google and/or Facebook in exchange for compensation and/or access to advanced targeting marketing and analytics. *See* AC ¶¶ 91-92. Courts have held that the use of online tracking tools to obtain valuable personal data about visitors for the purpose of increasing its own profits through targeted marketing and advertising renders allegations of intent to commit torts or violate state laws conclusory or unsupported by any facts. *See Williams v. TMC Health*, 2024 WL 4364150 at *4 (D. Ariz. Sept. 30, 2024) (dismissing ECPA claim). Here, as Plaintiffs' own allegations support the conclusion that ChoicePoint allegedly intercepted their communications for a non-criminal, non-tortious purpose, their ECPA claim is subject to dismissal.

***i. Plaintiffs Have Failed to Allege an Underlying Criminal or Tortious Purpose.***

To remedy the deficiencies in the Original Complaint's ECPA claim and lack of an underlying tortious or criminal purpose, Plaintiffs' Amended Complaint alleges that the interception took place in connection with violations of HIPAA and Plaintiffs' tort and state statutory claims. However, the Plaintiff must allege a tortious or criminal use of the acquired communications separate from their recording, interception, or transmission for the tortious or criminal act exception to apply. *See Nienaber*, 2025 WL at 692097 *13 (emphasis in original) (citing *Pena v. GameStop*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. Apr. 27, 2023). Where the allegations demonstrate that the

alleged tortious or criminal use of the acquired communications is the disclosure itself and further point to a non-criminal and non-tortious purpose of increasing profits through targeted advertisements, an ECPA claim is subject to dismissal. *Id*.

Moreover, courts are less likely to find allegations of HIPAA violations sufficient to support an underlying crime or tort where information is provided through a public website accessible to anyone as opposed to a private patient portal. *See K.L. v. Legacy Health*, 2024 WL 4794657 at *4 (D. Or. Nov. 14, 2024). Where a plaintiff alleges that patient status, prescription information, and specific treatment plans are intercepted through a private patient portal, those allegations can be sufficient to support an ECPA claim. *Id*. at *5-6. However, searches for medical treatments and specialists on a publicly accessible website have been found insufficient to support ECPA claims. *Id*. at *4 (holding that ECPA claim may proceed only with respect to PHI disclosed on patient portal and not with respect to disclosures made on public website).

Here, Plaintiffs have alleged that ChoicePoint's website is publicly accessible and allows any potential client to research its programs, request an appointment, and complete an online assessment of the severity of their addiction. *See* AC ¶¶ 10. Plaintiffs do not allege that they ever created an account or logged into a private patient portal on the Website. *See* AC ¶¶ 14-34. Further, Plaintiffs do not allege that they ever followed through with booking an appointment, became a patient, or otherwise received further medical treatment as a result of their inquiries made on the Website. While Plaintiffs allege that they completed the free online survey on the Website, they do not allege that any of their specific responses to the online survey were intercepted, only that the URL containing their survey results was transmitted to Google. *See* AC ¶¶ 76-77. The Court should find that these allegations are insufficient to establish and independent tortious or criminal act to support Plaintiffs' ECPA claim.

***ii. Plaintiffs' Consent Bars the ECPA Claim.***

The Website's Privacy Policy expressly discloses how user information is gathered and used by ChoicePoint. *See* Exhibit A to Declaration of Gabriel Saade. Where the plaintiff has consented to the interception at issue, an exception to the ECPA exists and the claims are barred. *See Lakes v. Ubisoft, Inc.*, 2025 WL 1036639 at *5 (N.D. Cal. Apr. 2, 2025) (dismissing ECPA claim and finding that "a reasonable user would understand from the Privacy Policy that he or she is consenting to the use of cooking including by third parties"). Likewise, here, the Court should conclude that Plaintiffs have consented to the use of third-party tracking tools based on the disclosures in ChoicePoint's Privacy Policy and their ECPA claim is therefore barred under the consent exception.

***iii. Plaintiffs Fail to Allege the Contents of Any Communications were Intercepted.***

Plaintiffs have also failed to allege that ChoicePoint intercepted the "contents" of any communications. Courts have held that referred header information automatically generated by a web browser, which is precisely what Plaintiffs allege ChoicePoint transmitted to Google and Facebook here, do not constitute violations of the ECPA. *See In re Zynga Privacy Litigation*, 750 F. 3d 1098, 1108 (9th Cir. 2014) (holding that URL information constitutes record information and not the contents of any communication and dismissing ECPA claim). Plaintiffs fail to allege that any of the contents of any communications with ChoicePoint's website were intercepted, simply that the URL along with identification and other information "commonly used to create a browser fingerprint." *See* AC ¶¶ 75-77. In Zynga, the court found that such information constituted record information about a user's communication, not the communication itself. *See In re Zynga Privacy Litigation*, 750 F. 3d at 1107 ("[b]ut the complaints here do not plausibly allege that Facebook and



DarrowEverett LLP, One SE Third Ave.
Miami, FL 33131

Zynga divulged a user's communications to a website; rather, they allege that Facebook and Zynga divulged identification and address information contained in a referrer header automatically generated by the web browser").

Here, while Plaintiffs' Complaint includes allegations concerning an unknown user's online addiction survey result, the Complaint contains no allegations concerning each individual Plaintiff's online addiction survey results, and what specific information, or contents of any communications, between any Plaintiff and ChoicePoint were intercepted and provided to Google and/or Facebook. *See* AC ¶¶ 76-79. The URL information that Plaintiffs allege was transmitted to Google and Facebook by ChoicePoint constitutes "record" information which is not the contents of any communication. As explained above, Plaintiffs have not alleged that any of the specific information they provided to ChoicePoint as part of the online screening tool was provided to any third party. Without more detailed allegations concerning any specific communications of any individual Plaintiff that were allegedly intercepted, Plaintiff cannot maintain an ECPA claim for failure to allege that the "contents" of any communication was intercepted. For these reasons, **Count VI** is subject to dismissal with prejudice.

### H. Plaintiffs' State Statutory Claims are Each Subject to Dismissal.

Plaintiffs' three statutory claims under Ohio, Indiana, and Washington state law are each subject to dismissal on several grounds as further explained below, including but not limited to failures to (1) allege a consumer transaction or relationship covered by these statutes, (2) plead claims based on fraud with the particularity required by Rule 9(b), (3) establish statutory standing by Plaintiffs, and (4) adequately plead damages.

#### *i. The Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. § 1345.01 et seq.).*



DarrowEverett LLP, One SE Third Ave.
Miami, FL 33131

The Ohio Consumer Sales Practices Act ("OCSPA") provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. *See Ewalt v. Gatehouse Media Ohio Holdings II, Inc.*, 2021 WL 825978 at *15 (S.D. Ohio Mar. 4, 2021) (quoting Ohio Rev. Code Ann. § 1345.02(A)). The OSCPA defines "consumer transaction" as a "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of those things." *See* Ohio Rev. Code Ann § 1345.01(A).

Plaintiffs have failed to properly allege a "consumer transaction" upon which to base their claim. Plaintiffs' allegations in support of its claim for violations of the OCSPA contain the bare and conclusory allegations that "Defendant's advertisement of, and statements made to solicit Plaintiff M.G. and Ohio Subclass Members to contract to receive its addiction rehabilitation services through its Website" … are "consumer transactions" under Ohio Rev. Code. Ann § 1345.01(A). Transmitting email messages to a consumer has been held to not be a "consumer transaction" for purposes of the OCSPA. *See Ferron v. Zoomego*, 276 Fed. Appx. 473, 474 (6th Cir. 2008) (dismissing OCSPA claim). Courts have also held that medical devices are not "consumer goods" under the OCSPA. *See Smith v. Smith & Nephew, Inc.*, 5 F. Supp. 3d 930, 932 (W.D. Ohio Mar. 10, 2014) (dismissing claim under OCSPA). The Court should likewise find here that the free online addiction evaluation survey allegedly offered by ChoicePoint does not constitute a "consumer transaction" under the OCSPA.

To establish a claim under the OCSPA, a plaintiff must also allege that there was a "material misrepresentation, deceptive act, or omission" that impacted his or her decision to purchase the item at issue. *See Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 798 (N.D. Ohio Feb. 3, 2012) (dismissing claim under OCSPA for failure to allege necessary elements of reliance or proximate

cause). While Plaintiffs base their OCSPA claim on "false promises" that ChoicePoint would keep their Sensitive Information confidential, they fail to allege that they relied on any such promises or other representations (or that they even read ChoicePoint's Privacy Policy) in deciding to complete an online addiction evaluation. *See* AC ¶¶ 81-86; and AC 212-214.

Plaintiffs have failed to specifically allege (i) any advertisements by ChoicePoint; (ii) any specific statements made to Plaintiff M.G. or others for solicitation purposes; (iii) the existence of any contract between Plaintiffs and ChoicePoint; or (iv) Plaintiffs' reliance on any such statements or misrepresentations. Without such allegations, Plaintiffs have failed to allege the existence of a consumer transaction and related material misrepresentation, deceptive act, or omission, and therefore cannot maintain their OCSPA claim. As a result, **Count VII** must be dismissed.

***ii. The Indiana Deceptive Consumer Sales Act (Ind. Code Ann. § 24-5-0.5-1, et seq.)***

The Indiana Deceptive Consumer Sales Act ("IDCSA") provides that "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." *See* Ind. Code § 24-5-0.5-3(a). Plaintiffs allege that ChoicePoint violated the IDCSA through "advertisement of, and statements made to solicit Plaintiff S.R. and Indiana Subclass Member to contract to receive addiction rehabilitation services through its Website." *See* AC ¶¶ 218. Plaintiffs further allege that these advertisements and statements amount to "consumer transactions" under the Indiana statute. *Id*. The intentional violations alleged under the IDCSA by Plaintiffs include the knowing and intentional actions of (i) falsely promising that it would keep confidential and not disclose the Sensitive Information; (ii) failing to inform Plaintiffs that it would provide their sensitive information to third parties for advertising and marketing services; and (iii)



DarrowEverett LLP, One SE Third Ave.
Miami, FL 33131

surreptitiously collecting and sharing Plaintiffs' Sensitive Information with third parties. *See* AC ¶¶ 218.

There are two possible types of actional deceptive acts under the IDCSA, "uncured" deceptive acts and "incurable" deceptive acts, and where the plaintiff does not distinguish between the two, the entire complaint must be judged by Rule 9(b)'s pleading standards. *See In re MCG Health Data Security Litigation*, 2023 WL 3057428 at *8 (citing *Young v. Harbor Motor Works, Inc*. 2009 WL 187793, at *6 (N.D. Ind. Jan. 27, 2009) (dismissing claim under IDSCA). Here as, Plaintiffs have failed to distinguish between uncured and incurable deceptive acts, and their claim sounds in fraud, it is subject to the heightened pleading standard of Rule 9(b). Plaintiffs have failed to state their claim under the IDCSA with the required particularity, as they have failed to specifically identify any "false promise" made to Plaintiffs, beyond conclusory and non-specific allegations. *See* AC ¶ 219. *See SMC Corp. v. Peoplesoft USA, Inc*., 2004 WL 2538641 at *5 (N.D. Ind. Oct. 12, 2004) (dismissing IDCSA claim for failing to identify specific instances of wrongful conduct with the particularity required by Rule 9(b)).

Further, none of Plaintiffs' allegations show that ChoicePoint engaged in a consumer transaction with any Plaintiff, namely one that is "for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things." *See* Ind. Code § 24-5-0.5-2(a)(1). Plaintiffs also do not allege that they purchased anything from ChoicePoint. For these reasons, Plaintiffs have failed to plead their claims with the required particularity and have also failed to adequately allege a consumer transaction under the IDCSA, and as a result **Count VIII** must be dismissed.

***iii. The Washington Consumer Protection Act (Wash. Rev. Code Ann. § 19.86.010, et seq.) ("WCPA").***

In order for a private plaintiff to prevail in a claim for violations of the WCPA, the plaintiff must prove (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public interest; (4) causing injury to plaintiff or his or her business or property; and (5) causation. *See Gray v. Amazon.com, Inc*. 653 F. Supp. 3d 847, 857-59 (W.D. Wash. Jan. 27, 2023) (dismissing claim for violations of the WCPA). Where claims under the WCPA "sound in fraud" and are based on a course of fraudulent conduct, then the heightened pleading standard of Rule 9(b) applies. *Id*. (citing *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020). Here, Plaintiffs allege that ChoicePoint provided Plaintiffs' Sensitive Information to third parties to generate marketing revenue, without informing Plaintiffs of its data collection practices or its sharing of such information with third parties. *See* AC ¶ 223. Plaintiffs fail to plead any detail as to when ChoicePoint "falsely promised" it would keep Plaintiffs' Sensitive Information confidential and not disclose it to any third parties. Plaintiffs' WCPA claim sounds in fraud and must be plead with the required particularity. Here, Plaintiffs, have failed to plead the required "who, what, when, where, and how" of the misconduct charged. *See Gray v. Amazon.com, Inc*. 653 F. Supp. 3d at 858. Plaintiffs have failed to plead when ChoicePoint made any alleged false promise, who made it, or that Plaintiffs specifically relied on any allegedly false statements by ChoicePoint.

Plaintiffs have also not properly plead causation in that their alleged injury would not have occurred but for ChoicePoint's allegedly unfair or deceptive acts. To establish causation, a plaintiff must plead that but for the defendants' unfair and deceptive acts, their injuries would not have occurred as a matter of fact. *Id*. at 859 (citing *Young v. Toyota Motor Sales, U.S.A.*, 196 Wash. 2d 310, 322, 472 P. 3d 990 (2020)). Plaintiffs' alleged damages are based on a theory that the economic value of their Sensitive Information was diminished because of ChoicePoint's conduct. *See* AC ¶ 224. However, Plaintiffs fail to plead how they would have obtained some financial

benefit through their Sensitive Information had ChoicePoint not allegedly intercepted it and provided it to third parties. Moreover, Plaintiffs' damages theory that the economic value of their Sensitive Information was somehow diminished conflicts with their allegations that they never intended or consented to the Sensitive Information being monetized through disclosure to third parties for advertising services. Even if Plaintiffs had properly alleged causation for their injuries, the invasion of privacy they claim to have suffered is a personal injury and not a business or property injury as required by the WCPA. *See Beagle v. Amazon.com, Inc*. 2024 WL 4028290 at *4 (dismissing WCPA claim for failure to allege unfair act or cognizable injury). Plaintiffs have also not alleged that time or money was spent to remedy the disclosure of the Sensitive Information. *See Nienaber v. Overlake Hospital Medical Center*, 2025 WL 692097 at *15 (W.D. Wash. Mar. 4, 2025) (dismissing WCPA claim on that basis that loss of value of Personal information alone is insufficient to maintain a WCPA claim). For these reasons, Plaintiffs have both failed to meet Rule 9(b)'s pleading requirements and have failed to allege causation for any damages, and as a result their claim for violations of the WCPA should be dismissed.

### I. PLAINTIFFS HAVE NOT STATED A CLAIM FOR VIOLATIONS OF THE WASHINGTON PRIVACY ACT.

The Washington Privacy Act ("WPA") prohibits individuals or entities from intercepting or recording any (a) private communication transmitted by telephone, telegraph, radio, or other device between two or more individuals, without first obtaining consent of all the participants in the communication; or (b) private conversation, by any device … without first obtaining the consent of all the persons engaged in the conversation. *See* RCW § 9.73.030(1); *see also Cousineau v. Microsoft Corp*., 992 F. Supp. 2d 1116, 1129 (W.D. Wash. June 22, 2012) (dismissing WPA claim for failure to allege that plaintiff intended to keep communication private from defendant)

("[w]ithout an individual on the other end of her communication (other than Microsoft), the transmission of Cousineau's data cannot be considered a communication under the WPA"). URLs containing search terms for specific prescription medications have been held to not constitute private communications "between two or more individuals" for WPA purposes. *See Castillo v. Costco Wholesale Corporation*, 2024 WL 4785136 at *9 (W.D. Wash. Nov. 14, 2024) (dismissing WPA claim on the basis that private communication must be between two or more individuals and a communication between an individual and a business entity's automated system does not qualify under the WPA). Further, courts have held that transmission of data entered into an online form does not constitute "conversations" under subsection (b) of the WPA. *Id*.

Plaintiffs' allegations here are limited to interactions between Plaintiffs and ChoicePoint's automated website. *See* AC ¶¶ 74-79. There are no allegations that any Plaintiff communicated with an individual associated with ChoicePoint. Without an allegation that Plaintiffs communications with an "individual" outside of ChoicePoint's automated online screening tool, Plaintiffs cannot establish a claim under subsection (a) of the WPA. *See Cousineau*, 992 F. Supp. at 1129.

A plaintiff bringing a claim under the WPA must also allege that they have suffered a cognizable injury as a result of the alleged violations. *See McKee v. General Motors Company*, 601 F. Supp. 3d 901, 908-09 (W.D. Wash. May 5, 2022) (dismissing WPA claim for lack of alleged injury and holding that allegations of potential injury are insufficient to state claim under the WPA). As explained above, Plaintiffs have failed to allege that they suffered any cognizable injury as a result of ChoicePoint's alleged conduct, and as a result their WPA claim is also subject to dismissal.

## VII. <u>CONCLUSION</u>



DarrowEverett LLP, One SE Third Ave.
Miami, FL 33131

For these reasons, Defendant ChoicePoint LLC d/b/a ChoicePoint Health respectfully requests that the Court grant its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) and enter an Order dismissing Plaintiffs' Amended Complaint with prejudice.

Date: June 10, 2025

Respectfully submitted,

By: */s/ Gabriel S. Saade*
Gabriel S. Saade, Esq.
WA Bar 57883; MA BBO No.695881
gsaade@darroweverett.com
DarrowEverett LLP
One SE Third Ave., Suite 2520
Miami, FL 33131
Tel.: (305) 686-5159
Fax: (305) 686-6159

ATTORNEYS FOR DEFENDANT, CHOICEPOINT, LLC d/b/a CHOICEPOINT HEALTH

I hereby certify that is memorandum contains 8,326 words, in compliance with the Local Civil Rules.

/s/ *Gabriel S. Saade, Esq*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: **Cynthia J. Heidelberg, Esq., and Brendan Wesley Donckers, Esq.,**

Dated: June 10, 2025

*/s/ Gabriel S. Saade, Esq.*