HONORABLE KYMBERLY E. EVANSON

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

**I.T.**, **A.K.**, **S.R.**, and **M.G.**, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**CHOICEPOINT LLC d/b/a CHOICEPOINT HEALTH,**

Defendant.

No. 2:25-cv-00193-KKE

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT CHOICEPOINT LLC d/b/a CHOICEPOINT HEALTH'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

NOTE FOR MOTION CALENDAR
DATE: July 11, 2025
**ORAL ARGUMENT REQUESTED**



**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ....................1
II. FACTUAL BACKGROUND ....................2
A. The Parties ....................2
B. Google and Facebook's Tracking Tools ....................2
C. ChoicePoint's Use of the Tracking Tools ....................3
III. LEGAL STANDARD ....................4
IV. ARGUMENT ....................4
A. Plaintiffs' Invasion of Privacy claims are well-pled. ....................4
i. ChoicePoint's use of the Tracking Tools constitutes public disclosure. ....................4
ii. ChoicePoint's disclosure was highly offensive. ....................6
B. Plaintiffs Properly Plead Breach of Fiduciary Duty. ....................8
C. Plaintiffs' Negligence Claim is Sound. ....................9
i. Plaintiffs plead cognizable damages to support their negligence claims. ....................9
ii. Plaintiffs allege a duty owed to them by ChoicePoint ....................10
D. Plaintiffs' Breach of Implied Contract Claim is Properly Pled. ....................10
E. Plaintiffs' Unjust Enrichment Claim is Sound. ....................12
F. Plaintiffs' Electronic Communications Privacy Act ("ECPA") claims are meritorious. ....................12
i. Plaintiffs' allegations satisfy the crime-tort exception. ....................12
ii. Plaintiffs did not consent to ChoicePoint's disclosure of their Sensitive Information. 14
iii. Plaintiffs allege that ChoicePoint disclosed the "contents" of the communications through the Website. ....................15
G. Plaintiffs' State Statutory Claims are Sound. ....................16
i. Ohio Consumer Sales Practices Act ("OCSPA") ....................16
ii. Indiana Deceptive Consumer Sales Act ("IDCSA") ....................17
iii. Washington Consumer Protection Act ("WCPA") ....................18
V. CONCLUSION ....................20




**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

## TABLE OF AUTHORITIES

### Cases

*A.J. v. LMND Med. Grp., Inc.*, No. 23-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ........ 9
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 4
*B.K. v. Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 67497 (C.D. Cal. Apr. 11, 2024) ........ 14
*Beagle v. Amazon*, No. C24-0316JLR, 2024 U.S. Dist. LEXIS 158111 (W.D. Wash. Sep. 3, 2024) ........ 6
*Brahm v. Hosp. Sisters Health Sys.*, No. 23-cv-444-wmc, 2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) ........ 6
*Buckley v. Santander Consumer USA, Inc.*, 2018 U.S. Dist. LEXIS 53411 (W.D. Wash. Mar. 29, 2018) ........ 6
*Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336 (9th Cir. 1996) ........ 4
*Castillo v. Costco Wholesale Corp.,* No. 2:23-cv-01548-JHC, 2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) ........ 11, 14, 15
*Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369 (S.D.N.Y. 2024) ........ 14
*Cowles Pub. Co. v. State Patrol*, 109 Wash. 2d 712 (1988) ........ 7
*Doe v. Med. Scanning Consultants P.A.*, 2024 Ind. Super. LEXIS 6 (Ind. Super. Ct. April 8, 2024) ........ 18
*Ferron v. Zoome*, 276 F. App'x 473 (6th Cir. 2008) ........ 17
*Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sep. 16, 2024) ........ 14
*Guy v. Convergent Outsourcing, Inc.,* No. C22-1558 MJP, 2023 U.S. Dist. LEXIS 125332 (W.D. Wash. July 20, 2023) ........ 5, 19, 20
*Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wash. 2d 778 (1986) ........ 19
*Huong Hoang v. Amazon.com, Inc.,* No. C11-1709MJP, 2012 U.S. Dist. LEXIS 45498 (W.D. Wash. Mar. 28, 2012) ........ 19
*In re Hulu Privacy Litigation*, 2014 U.S. Dist. LEXIS 59479 (N.D. Cal. Apr. 28, 2014) ........ 6
*In re Zynga Privacy Litigation*, 750 F. 3d 1098 (9th Cir. 2014) ........ 15
*K.S. v. City of Puyallup*, No. 13-5926 RJB, 2014 U.S. Dist. LEXIS 159883 (W.D. Wash. Nov. 13, 2014) ........ 10
*Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024) ........ 14
*Knappenberger v. City of Phoenix*, 566 F.3d 936 (9th Cir. 2009) ........ 4
*Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 U.S. Dist. LEXIS 219895 (N.D. Ill. Dec. 11, 2023) ........ 14
*Lakes v. Ubisoft, Inc.*, No. 24-cv-06943-TLT, 2025 U.S. Dist. LEXIS 67336 (N.D. Cal. Apr. 1, 2025) ........ 14
*Lamarr v. Goshen Health* Sys., Inc., 2024 Ind. Super. LEXIS 107 (Ind. Super. Ct. Oct. 3, 2024) ........ 18
*Liebergesell v. Evans*, 93 Wash. 2d 881 (1980) ........ 8
*Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916 (D. Minn. 2024) ........ 14
*Multicare Med. Ctr. v. Dep't of Soc. & Health Servs.*, 790 P.2d 124 (1990) ........ 11
*Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 U.S. Dist. LEXIS 38654 (W.D. Wash. Mar. 4, 2025) ........ 9, 11, 12
*Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072 (W.D. Wash. 2024) ........ 20



**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

*Nunley v. Chelan-Douglas Health Dist.*, 32 Wash. App. 2d 700 (2024) ....................................10
*Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 27 (2009)...............................................19, 20
*R.S. v. Prime Healthcare Servs*., No. 5:24-cv-00330-ODW (SPx), 2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025) ..........................................................................................14
*Reid v. Pierce Cty.*, 136 Wash. 2d 195 (1998) ..........................................................4, 5
*Smith v. Smith & Nephew, Inc.* 5 F. Supp. 3d 930 (W.D. Ohio Mar. 10, 2014)..........................17
*State ex rel. Dewine v. Classmates, Inc*., No. 15CV004418, 2015 Ohio Misc. LEXIS 1499 (Ct. Com. Pl. June 5, 2015) ..........................................................................................17
*State v. TikTok Inc.,* 245 N.E.3d 681 (Ind. Ct. App. 2024) ..............................................18
*White v. Town of Winthrop*, 128 Wash. App. 588 (2005) .................................................10
*Williams v. TMC Health*, 2024 U.S. Dist. LEXIS 178452 (D. Ariz. Sept. 30, 2024) .................10

**Statutes**

18 U.S.C. § 2510 ..........................................................................................16
18 U.S.C. § 2511 ..........................................................................................13
Ind. Code Ann. § 24-5-0.5-2 ...............................................................................18
Ind. Code Ann. § 24-5-0.5-3 ...............................................................................18
Ohio Rev. Code Ann. § 1345.01 ...........................................................................17
Ohio Rev. Code Ann. § 1345.02 ...........................................................................16
Restatement (Second) of Torts § 386 .......................................................................7
Restatement (Second) of Torts, § 652D ...................................................................5, 7
Wash. Rev. Code Ann. § 19.86.020 .........................................................................19



**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

## I. PRELIMINARY STATEMENT

Addiction is one of the most challenging, embarrassing struggles that an individual can face. Plaintiffs each struggled with addiction and made the decision to seek treatment for their condition from Defendant ChoicePoint, LLC d/b/a ChoicePoint Health ("ChoicePoint"). ChoicePoint is a medical provider specializing in addiction treatment services. Through ChoicePoint's website, www.choicepointhealth.com (the "Website"), Plaintiffs requested consultations to discuss their treatment options, and used an online diagnostic tool provided by ChoicePoint to determine the severity of their addictions. When they did so, they believed that their communications with ChoicePoint would be held to the standard of confidentiality expected when such a sensitive topic as addiction is at issue. Unfortunately, they were not. Unbeknownst to Plaintiffs, ChoicePoint had installed advertising surveillance software produced by Google and Facebook (the "Tracking Tools") on its Website and, in exchange for advanced marketing and advertising services, allowed these internet behemoths to collect sensitive personally identifiable information from users of the Website for the purpose of targeted advertising. This information included some of the most sensitive aspects of Plaintiffs' lives, including the fact that they suffered from addiction, as well as the results of their online addiction evaluations (collectively, the "Sensitive Information").

In its Motion to Dismiss, ChoicePoint concedes that it installed the Tracking Tools on its Website. It does not dispute that it shared the most embarrassing facets of Plaintiffs' lives with the largest advertising companies in the world. It does not even oppose Plaintiffs' allegations that it violated the Health Insurance Portability and Accountability Act ("HIPAA") through its unauthorized disclosure of their Sensitive Information. Instead, ChoicePoint attempts to argue that its Privacy Policy (the "Privacy Policy") provided sufficient notice to Plaintiffs of its use of the Tracking Tools, despite that Policy clearly promising that, "We don't sell, trade, or give away



BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

your personal information to anyone…As always we respect your privacy and are not collecting any identifiable information through the use of Google's or any other 3rd party remarketing system."[1]

As explained herein, ChoicePoint's Motion to Dismiss uniformly misrepresents both Plaintiffs' allegations and the applicable law. It should be denied.

## II. FACTUAL BACKGROUND

### A. The Parties

ChoicePoint is a medical provider specializing in addiction treatment services operating in seventeen states and the District of Columbia.[2] Through its Website, individuals suffering from addiction can research information about its rehabilitation services, request an appointment for a consultation, and complete an online assessment of the severity of their addiction. *Id*. Plaintiffs are all individuals who have struggled with addiction, and who sought rehabilitation services from ChoicePoint through its Website, including by completing its online addiction assessment and by requesting appointments for consultations. *Id*. ¶¶ 13-33.

### B. Google and Facebook's Tracking Tools

Google and Facebook offer website operators access to their proprietary suites of marketing, advertising and customer analytics software. *Id.* ¶ 5. Armed with these programs, website operators can leverage Google and Facebook's enormous database of consumer information for the purposes of deploying targeted advertisements, performing minute analyses of their customer bases, and identifying new market segments that may be exploited. *Id*. But, in exchange for access to this software, website operators must install Google and Facebook's Tracking Tools on their website—third party surveillance software that captures sensitive,

[1] ECF 17-2 [ChoicePoint's Privacy Policy] ("Privacy Policy"), at pp. 2, 4.
[2] ECF 13 [Amended Class Action Complaint] ("A.C."), ¶ 9.



BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

personally identifiable information provided to the website operator by its users. *Id.* ¶ 6. Google and Facebook then aggregate the user information that they collect from third-party websites into 'advertising profiles' consisting of all of the data that they have collected about a given user. *Id.* ¶ 49. With these advertising profiles, Google and Facebook can sell hyper-precise advertising services, allowing their clients to target internet users based on combinations of their location, age, race, interests, hobbies, life events (e.g., recent marriages, graduation, or income, type of employment, use of specific apps or websites, and more). *Id.* Where an internet user has a Facebook or Google account, this information can be correlated to their identity, through tracking cookies installed on the user's web browser. *Id.* ¶¶ 66-69.

**C. ChoicePoint's Use of the Tracking Tools**

ChoicePoint installed Google and Facebook's Tracking Tools on the Website. *Id.* ¶ 75. The company then specifically chose to take the generic version of the Tracking Tools and configure them to convey almost any action taken by users of the Website. *Id.* ¶ 80. While ChoicePoint argues that the information captured by its Tracking Tools is limited to URL information, in reality, the Tracking Tools are configured to intercept and relay precise actions taken by users' of the Website, including the fact that they have submitted a form requesting an addiction consultation, and the diagnoses made by ChoicePoint's addiction severity assessment. A.C. ¶¶ 76-79. All of this Sensitive Information is shared with Google and Facebook, allowing advertisers to use it for the purpose of targeted advertising.

Importantly, Plaintiffs never consented to ChoicePoint's use of the Tracking Tools. Indeed, ChoicePoint's Privacy Policy explicitly states that: "We don't sell, trade, or give away your personal information to anyone…As always we respect your privacy and are not collecting any identifiable information through the use of Google's or any other 3rd party remarketing system." Privacy Policy, at pp. 2, 4. ChoicePoint's admission that it does use Google's Tracking



BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

Tools establishes that this clear language in its own Privacy Policy is at best misleading, but more probably an outright falsehood.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the burden of proof is on the movant, and the court draws all reasonable inferences in plaintiff's favor, assuming all well pleaded factual allegations to be true and determining whether they plausibly give rise to an entitlement to relief. *See, e.g., Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337– 38 (9th Cir. 1996). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement") (internal quotation marks omitted). Courts are instructed to freely grant leave to amend unless the defects identified could not possibly be cured. *See, e.g., Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## IV. ARGUMENT

### A. Plaintiffs' Invasion of Privacy claims are well-pled.

#### *i. ChoicePoint's use of the Tracking Tools constitutes public disclosure.*

Nearly thirty years ago, the Washington Supreme Court "explicitly h[e]ld [that] the common law right of privacy exists in this state and that individuals may bring a cause of action for invasion of that right." *Reid v. Pierce Cty.*, 136 Wash. 2d 195, 206, 961 P.2d 333, 339 (1998) (observing that "[t]ort liability for invasions of privacy by public disclosure of private facts is set forth in Restatement (Second) of Torts § 652D"). Under this cause of action, a defendant is liable for invasion of privacy where it "gives publicity to a matter concerning the private life of another…if the matter publicized is of a kind that (a) would be highly offensive to a reasonable



BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

person, and (b) is not of legitimate concern to the public." *Id*. In providing examples of "publicity," the Supreme Court relied on the definition in the Second Restatement of Torts, which states that any "communication that reaches, or is sure to reach, the public …. is sufficient to give publicity within the meaning of the term as it is used in this Section." Restatement 2d of Torts, § 652D. For example, courts in this District have held the publicization requirement satisfied where an unknown third party accessed plaintiff's private information held by the defendant, finding that "[defendant] is incorrect that the publication must be to a large group. It is enough to know the information was accessed and is likely being disseminated." *Guy v. Convergent Outsourcing, Inc.,* No. C22-1558 MJP, 2023 U.S. Dist. LEXIS 125332, at *20 (W.D. Wash. July 20, 2023). Likewise, the Washington Supreme Court has found that the display of private photographs at a cocktail party constitutes sufficient publicity to maintain a claim for invasion of privacy. *Reid*, 136 Wash. 2d 195 at 198-99.

In their Amended Complaint, Plaintiffs allege that their Sensitive Information was transmitted to two massive, global corporations, Google and Facebook, not merely for their own use but for use in a mass advertising surveillance apparatus that includes the operators of ***74-percent*** of all web traffic. A.C. ¶¶ 3-10, 49-51. Google and Facebook make no secret about the reason for this surveillance, all of the information they gather is used to sell targeted advertising to third parties. A.C. ¶¶ 45-49. The companies "aggregate the user information that they collect from third-party websites into 'advertising profiles' consisting of all of the data that they have collected about a given user" which they then use to allow "their clients to target internet users" based on that information. *Id.* ¶ 50. In the words of Google's former CEO, these profiles allow advertisers to "know where you are[,] where you've been[,] and what you're thinking about." *Id.* ¶ 53. The scope of this disclosure far outstrips the attendance of even the most crowded cocktail party. Courts have concurred under nearly identical circumstances. *See, e.g., Brahm v. Hosp.*



**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

*Sisters Health Sys.*, No. 23-cv-444-wmc, 2024 U.S. Dist. LEXIS 114827, at *20-21 (W.D. Wis. June 28, 2024) (finding sufficient publicity where plaintiffs alleged that information disclosed through tracking pixel was transmitted to "various technology companies that employ hundreds of thousands of employees who have access to this information").

ChoicePoint's supporting caselaw is distinguishable. In *Beagle v. Amazon*, the plaintiffs alleged that Amazon had shared their personal information with its affiliates without their consent. No. C24-0316JLR, 2024 U.S. Dist. LEXIS 158111, at *2 (W.D. Wash. Sep. 3, 2024). However, the plaintiffs' only supporting factual allegation was the existence of an Amazon Term of Use stating that Amazon Services merely "'***may*** provide information about your viewing behavior to third parties[,]'" which the court found only made the claim possible, not probable. *Id* at *3 (emphasis in original). Here, Plaintiffs clearly allege that ChoicePoint did, and regularly does, disclose Sensitive Information. A.C. ¶¶ 74-81. In fact, the *Beagle* court explicitly distinguished the plaintiffs' allegations from allegations that a defendant's website included "code that 'automatically' transmitted users' PII to Facebook," as alleged by Plaintiffs in this case. *Id* at *7 (quoting *In re Hulu Privacy Litigation*, 2014 U.S. Dist. LEXIS 59479, at *13, (N.D. Cal. Apr. 28, 2014).[3]

***ii. ChoicePoint's disclosure was highly offensive.***

In "illustrat[ing] what nature of facts are protected by [the] right to privacy," the Washington Supreme Court has affirmed that:

> Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family

[3] ChoicePoint additionally cites *Buckley v. Santander Consumer USA, Inc.*, 2018 U.S. Dist. LEXIS 53411, at *7 (W.D. Wash. Mar. 29, 2018). But *Buckley* is wholly inapplicable because (1) *Buckley* is a data breach case with no factual similarity to the instant matter, and (2) the *Buckley* plaintiffs did not make a claim for publication of private facts.



BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

> quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.

*Cowles Pub. Co. v. State Patrol*, 109 Wash. 2d 712, 721, 748 P.2d 597, 602 (1988) (quoting Restatement (Second) of Torts, at 386).

Numerous courts have agreed that drug addiction is the type of illness that may subject an individual to humiliation and ridicule. *See* ECF 2, § II(B) (collecting cases wherein the court concluded that publicization of the plaintiff's drug addiction would result in reputational harm and humiliation). In their Amended Complaint, Plaintiffs allege that through the Tracking Tools, ChoicePoint disclosed the fact that they were seeking treatment services due to addiction, as well as the results of their online addiction severity tests. Moreover, Plaintiffs repeatedly allege that this information was personally identifiable as it was linked to their Google and Facebook accounts. A.C. ¶¶ 6, 62-81.

It is well established that addiction carries a significant social stigma. There is no other medical condition that could be considered a more "unpleasant or disgraceful or humiliating illness." Restat 2d of Torts, § 652D (Illustr.); *see also* ECF 2, § II(B); A.C. ¶ 131 (citing multiple peer-reviewed studies examining the shame and stigma of addiction). ChoicePoint's publication of these private, embarrassing aspects of Plaintiffs' lives therefore constitutes invasion of privacy. ChoicePoint attempts to claim that Plaintiffs' allegations are insufficient because Plaintiffs did not risk further disclosure by pleading the actual results of their online surveys. Mot. at 10. However, Plaintiffs provide an example of what information is transmitted in ¶ 77 of the Amended Complaint (showing that the URL clearly includes "result=extremleysevere"), and combined with Plaintiffs' allegations that they were seeking treatment and that the results of the survey were transmitted to Google, these allegations are more than sufficient. Further information



**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

is unnecessary because Plaintiffs' identities were disclosed to ChoicePoint, and ChoicePoint could undoubtedly find their results in its own data, making such information superfluous on a noticed pleading standard. Furthermore, the fact that ChoicePoint would even argue that such information needed to be in the publicly filed complaint, shows that the company fundamentally misunderstands its patients' need for privacy. Even if Plaintiffs remain anonymous, the gratuitous disclosure of their results would still cause significant apprehension for fear that it could eventually be traced back to them.[4]

**B. Plaintiffs Properly Plead Breach of Fiduciary Duty.**

Under Washington law, "a fiduciary relationship can [] arise *in fact* regardless of the relationship *in law* between the parties." *Liebergesell v. Evans*, 93 Wash. 2d 881, 890, 613 P.2d 1170, 1176 (1980). ChoicePoint argues, with no legal support, that it cannot owe Plaintiffs a fiduciary duty because there is "no allegation that Plaintiffs ever became customers or patients of ChoicePoint."[5] Not so. If a person suffering from drug addiction submitted a detailed description of their illness to ChoicePoint through a patient intake form, could ChoicePoint argue that it owed no fiduciary duty and could freely share the information provided simply because the individual's appointment was later canceled? Surely not. When individuals visit ChoicePoint's Website to explore treatment options, they understand that they are communicating with a medical provider about a medical condition and reasonably expect those communications

[4] Indeed, Plaintiffs have significant, justifiable privacy concerns regarding public disclosure of their addictions. Indeed, this Court has allowed, (and Defendant has not opposed,) Plaintiffs' pseudonymization in order to protect their privacy. *See* ECF 8. Accordingly, the Amended Complaint uses exhibits collected from a demonstrative user rather than from Plaintiffs' devices. Nonetheless, all Plaintiffs allege that they used the Website and, as a result of such use, their Sensitive Information was tracked and disclosed in the same manner as depicted in the demonstrative exhibits. A.C. ¶¶ 15, 20, 25, 31.

[5] ECF 17 [Defendant Choicepoint LLC d/b/a Choicepoint Health's Motion to Dismiss Amended Class Action Complaint] ("Mot."), at 12:7-8.



BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

to be held in confidence. Courts have found a fiduciary duty requiring safekeeping of private information under similar circumstances. *See A.J. v. LMND Med. Grp., Inc.*, No. 23-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *10 (N.D. Cal. Oct. 25, 2024) (finding that healthcare provider owed a fiduciary duty to individuals who submitted information on its website pertaining to health-related services "even if they did not formally enter a physician-patient relationship with [it]"). As such, Defendant's Motion should be denied as to Plaintiffs' well-pled breach of fiduciary duty claim.

**C. Plaintiffs' Negligence Claim is Sound.**

***i. Plaintiffs plead cognizable damages to support their negligence claims.***

Plaintiffs allege that they have "suffered harm and injury including, but not limited to, an invasion of their privacy rights." A.C. ¶¶ 164, 190. ChoicePoint argues that Plaintiffs' alleged privacy injury is foreclosed upon by *Nienaber*, but this statement misstates the *Nienaber* court's holding. In *Nienaber*, the Court observed, as it had done previously, that "injury or damages may be adequately alleged where a plaintiff alleges 'a heightened risk of future identity theft, ***loss of privacy with respect to highly sensitive information***, loss of time, and risk of embarrassment[.]'" *Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 U.S. Dist. LEXIS 38654, at *20 (W.D. Wash. Mar. 4, 2025) (emphasis added). However, because the Plaintiff in *Nienaber* failed to cite any "support for the proposition that loss of privacy alone can constitute damages for a negligence claim under Washington law," the court did not find that the alleged privacy injury sufficed to establish damages. *Id.* at *21-22. Considering this holding in its context, the *Nienaber* court's final determination is better understood as a reflection of the plaintiff's failure to provide sufficient support for her argument, rather than as an inexplicable contradiction of the plain language of both its present and prior rulings. *Id.* at *21. Indeed, Washington courts recognize that violation of a plaintiff's privacy right, like those alleged by Plaintiffs, may constitute injury for a tort claim.



**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

*K.S. v. City of Puyallup*, No. 13-5926 RJB, 2014 U.S. Dist. LEXIS 159883, at *16 (W.D. Wash. Nov. 13, 2014) (denying motion for summary judgment on negligence claim as determination of whether violation of plaintiffs' privacy right resulted in damages is question of fact); *White v. Town of Winthrop*, 128 Wash. App. 588, 597, 116 P.3d 1034, 1039 (2005) (finding that harm to privacy interest constitutes compensable damages).

#### ***ii. Plaintiffs allege a duty owed to them by ChoicePoint.***

Plaintiffs allege that by "collecting and storing" their Sensitive Information, "Defendant had a duty of care to use reasonable means to secure and safeguard it from unauthorized disclosure to third parties, including Google. A.C. ¶ 186. ChoicePoint cites *Williams v. TMC Health* for the proposition that it did not owe a duty to Plaintiffs with regard to their Sensitive Information. 2024 U.S. Dist. LEXIS 178452, at *19 (D. Ariz. Sept. 30, 2024). But *Williams* relies upon inapplicable Arizona law. *Id*. Under Washington law, companies that collect personally identifiable information have a duty to protect it. *See Nunley v. Chelan-Douglas Health Dist.*, 32 Wash. App. 2d 700, 715, 558 P.3d 513, 522 (2024) ("Imposing a duty on companies that collect and store PII and PHI to use reasonable care not only is supported by the *Restatement* and our existing case law but it is also supported by policies already established in Washington").[6] As Washington law imposes a duty on ChoicePoint to protect the personally identifiable information in its possession, including Plaintiffs' Sensitive Information, Plaintiffs' negligence claim is sound.

### **D. Plaintiffs' Breach of Implied Contract Claim is Properly Pled.**

[6] Moreover, even if *Williams* was applicable, Plaintiffs would still likely be able to establish a duty because they allege that ChoicePoint violated its duties under HIPAA. *See* 2024 U.S. Dist. LEXIS 178452, at *19 ("healthcare providers like Defendant may have a duty under HIPAA to protect unauthorized disclosure of sensitive information"),



**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

ChoicePoint argues that "the Website's Privacy Policy discloses precisely how personal information is automatically collected from Website visitors" and "directly contradicts Plaintiffs' allegations that…ChoicePoint agreed to safeguard Plaintiffs Sensitive Information and not disclose it without consent." Mot. at 15:22-23, 17:3-5. This is a puzzling conclusion given the Privacy Policy's explicit promises to do just that. Indeed, in its Privacy Policy, ChoicePoint states: "***We don't sell, trade, or give away your personal information to anyone.***" Privacy Policy at p. 2 (emphasis added). The same Policy, following a discussion regarding ChoicePoint's use of Google advertising software, provides the additional assurance that ChoicePoint "respect[s] your privacy and [is] not collecting any identifiable information through the use of Google's or any other 3rd party remarketing system." *Id.* at p. 4.

These representations are false. In reality, ChoicePoint does give away personal information collected through its Website, and does collect identifiable information through use of both Google's and other third-party remarketing systems (e.g., Facebook's), as alleged in Plaintiffs' Amended Complaint. A.C. ¶¶ 76-79. ChoicePoint misrepresents *Nienaber* for the proposition that an implied contract claim must allege "circumstances that indicate the person rendering [services] expected to be paid, and that the recipient of the services expected, or should have expected, to pay for them." Mot. at 14:23-26. However, not only is *Nienaber* distinguishable on its facts, it also acknowledges that an implied contract claim may exist where the defendant has made promises through a privacy policy to protect its website users' information beyond their obligations under the law. *Nienaber*, 2025 U.S. Dist. LEXIS 38654, at *31; *see also Castillo v. Costco Wholesale Corp.,* No. 2:23-cv-01548-JHC, 2024 U.S. Dist. LEXIS 207197, at *46-47 (W.D. Wash. Nov. 14, 2024) (quoting *Multicare Med. Ctr. v. Dep't of Soc. & Health Servs.*, 790 P.2d 124, 132 (1990)) ("The Washington Supreme Court has held that for there to be consideration [in an implied contract], an offeree must promise to perform 'an additional



**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

obligation or burden not previously imposed by law.'"). Plaintiffs properly allege an implied contract arising out of ChoicePoint's promise to protect and keep confidential ***all*** personal information collected through its Website including general browsing information not protected under HIPAA or other privacy regulations, as well as ChoicePoint's subsequent breach of that implied contract by employing the Tracking Tools to record and transmit every action taken by its Website users. *See* A.C. ¶ 82 ("Defendant's Privacy Policy promises its Website users: 'We don't sell, trade, or give away your personal information to anyone'"). Therefore, Defendant's Motion should be denied as to Plaintiffs' breach of implied contract claim.

**E. Plaintiffs' Unjust Enrichment Claim is Sound.**

Defendant argues that Plaintiffs' unjust enrichment claim fails because "Plaintiffs have not alleged that they ever paid any monies to Defendant in connection with the Plaintiffs' use of Defendant's Website and Services." Mot. at 18:11-13. But, where a plaintiff has "alleged the provision of her Private Information to Defendant," she "has alleged the conferral of a benefit upon Defendant for the purposes of her unjust-enrichment claim." *Nienaber*, 2025 U.S. Dist. LEXIS 38654, at *32.

Here, Plaintiffs allege that the information that they communicated to ChoicePoint through their use of the Website had value. *See* A.C. ¶¶ 94-99 (discussing monetary value of internet browsing information). Accordingly, Plaintiffs have alleged a sufficient benefit conferred upon ChoicePoint for the purposes of their unjust enrichment claims.

**F. Plaintiffs' Electronic Communications Privacy Act ("ECPA") claims are meritorious.**

***i. Plaintiffs' allegations satisfy the crime-tort exception.***

A claim exists under the ECPA where a defendant intentionally uses or discloses the contents of an intercepted electronic communication. 18 U.S.C. § 2511(1)(c)-(d). Where, like



BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

here, the defendant is a party to the communication, liability may still be established through the "crime-tort exception" if the defendant's interception is "for the purpose of committing [a] criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

Plaintiffs have satisfied the crime-tort exception by alleging that ChoicePoint's Tracking Tools disclosed their HIPAA-protected health information to unauthorized third parties, including Google and Facebook. ChoicePoint does not dispute the fact that its use of the Tracking Tools violates HIPAA. Instead, ChoicePoint argues that Plaintiffs have not satisfied the crime-tort exception because they fail to "allege a tortious or criminal use of the acquired communications separate from their recording, interception, or transmission." Mot. at 19:22-23.

Not so. Plaintiffs do not allege that Defendant violated HIPAA by ***intercepting*** their communications made through the Website. Rather, Plaintiffs allege that ChoicePoint violated HIPAA by ***disclosing the intercepted communications to unauthorized third parties***. As the *Castillo* court explains, this theory of liability conforms with the text of the ECPA and has been endorsed by the Ninth Circuit:

> The Court disagrees that use of health information 'inheres in the alleged interception.' In setting forth the crime-tort exception, the Wiretap Act expressly distinguishes between the interception of communications and a separate criminal or tortious purpose by providing that the communication must be '*intercepted* for the purpose of committing any criminal or tortious act.' The Wiretap Act does not distinguish between the use of communications and a separate criminal or tortious purpose. Indeed, the use of intercepted communications is often the criminal or tortious purpose.
>
> The Ninth Circuit has favorably cited a Second Circuit decision that states, 'if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act.' The Court concludes that alleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception.

2024 U.S. Dist. LEXIS 207197, at *18-19 (holding that disclosure of health information through the same Facebook Tracking Tools at-issue in this case satisfies ECPA crime-tort exception).



BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

Numerous courts concur.[7] Plaintiffs' allegations that ChoicePoint disclosed their sensitive health information to Google and Facebook in violation of HIPAA therefore satisfy the crime-tort exception of the ECPA.

#### ***ii. Plaintiffs did not consent to ChoicePoint's disclosure of their Sensitive Information.***

As discussed in § IV(E), *supra*, ChoicePoint's Privacy Policy does not establish Plaintiffs' consent to its disclosure of their Sensitive Information. Unlike in the sole case it cites in support of this argument, ChoicePoint's Privacy Policy does not inform website visitors that it will disclose their personal information to third parties. In fact, it explicitly promises not to do so. *Compare Lakes v. Ubisoft, Inc*., No. 24-cv-06943-TLT, 2025 U.S. Dist. LEXIS 67336, at *5 (N.D. Cal. Apr. 1, 2025) ("[defendant]'s Privacy Policy, which all [of defendant's] account holders must agree to, informs users that their information will be shared with third parties"); *with* Privacy Policy, at pp. 2-4 ("We don't sell, trade, or give away your personal information to anyone…As always we respect your privacy and are not collecting any identifiable information through the use of Google's or any other 3rd party remarketing system."). Plaintiffs' consent to ChoicePoint's collection and transmission of their personally identifiable Sensitive Information simply cannot be established through a Privacy Policy stating that ChoicePoint does not share personal

---

[7] *See also R.S. v. Prime Healthcare Servs*., No. 5:24-cv-00330-ODW (SPx), 2025 U.S. Dist. LEXIS 6338, at *20 (C.D. Cal. Jan. 13, 2025) (crime-tort exception satisfied where defendant intercepted and shared health information with third parties through Facebook Tracking Tools installed on website, in violation of HIPAA); *B.K. v. Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 67497, at *4 (C.D. Cal. Apr. 11, 2024) (same); *Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 U.S. Dist. LEXIS 48515, at *23 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 (D. Minn. 2024) (same); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380 (S.D.N.Y. 2024) (same); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 U.S. Dist. LEXIS 168515, at *13 (S.D.N.Y. Sep. 16, 2024) (same); *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 U.S. Dist. LEXIS 219895, at *8 (N.D. Ill. Dec. 11, 2023) (same).



BRESKIN | JOHNSON | TOWNSEND PLLC
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

information with third parties and does not collect personally identifiable information through the Tracking Tools.

***iii. Plaintiffs allege that ChoicePoint disclosed the "contents" of the communications through the Website.***

Plaintiffs properly allege that ChoicePoint disclosed the contents of their communications through the Website to Google and Facebook. The ECPA defines "contents" as including "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). ChoicePoint incorrectly asserts that in *In re Zynga Privacy Litigation*, the Ninth Circuit held that URL information categorically constitutes record information pertaining to a communication rather than its contents. Mot. at 21:15-19 (citing 750 F. 3d 1098, 1108 (9th Cir. 2014)). In reality, *Zynga* draws an important distinction: while URLs that merely show the webpages visited by a website user are indeed record information, URLs that indicate a specific action taken by the user on the website, such as a search term input into a search box, represent the contents of the user's communications with the website operator. *Zynga*, 750 F. 3d at 1107-09; *see also Castillo*, 2024 U.S. Dist. LEXIS 207197, at *15 (distinguishing general browsing information from information that reveals a user's health condition).

In their Amended Complaint, Plaintiffs allege that the Tracking Tools inform Google and Facebook whenever a user submits a request for an appointment or consultation by transmitting the URL associated with the confirmation page indicating that an appointment has been requested. A.C. ¶¶ 78-79. Moreover, the Tracking Tools simultaneously transmit not just this confirmation page URL, but also the "event action" and "event category"—specific lines of code that indicate the user has taken a certain action on the Website—associated with a scheduling form being submitted. *Id*. Plaintiffs further allege that the Website transmits both the fact that a



**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

user has completed its "online addiction severity test" as well as the diagnosis provided to the user by the test. *Id.* ¶¶ 76-77.

These disclosures constitute far more than record information. When Plaintiffs requested their consultations, Google and Facebook were informed not just that Plaintiffs had visited a substance abuse center's website, but also that they had filled out and submitted a form requesting an appointment to discuss receiving addiction-related treatment. When Plaintiffs took ChoicePoint's addiction severity test, Google and Facebook were informed of the diagnosis provided to them by ChoicePoint's automated diagnostic tool. These transmissions fully convey the "substance, purport, or meaning" of Plaintiffs' communications with ChoicePoint: that they were suffering from addiction, that they were requesting an appointment to discuss ChoicePoint's treatment services, and that ChoicePoint had in-turn confirmed the severity of their addictions. 18 U.S.C. § 2510(8).

**G. Plaintiffs' State Statutory Claims are Sound.**

***i. Ohio Consumer Sales Practices Act ("OCSPA")***

To maintain a claim under the Ohio Consumer Sales Practices Act, Plaintiffs must allege that ChoicePoint committed an unfair or deceptive act or practice in connection with a consumer transaction. Ohio Rev. Code Ann. § 1345.02. They have done so.

First, Plaintiffs adequately allege a consumer transaction. Under the OCSPA, a consumer transaction "means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or ***solicitation to supply any of these things***." Ohio Rev. Code Ann. § 1345.01(A) (emphasis added). Transactions between a medical "service provider such as a hospital and the consumer" constitute consumer transactions under the OCSPA. *Summa Health Sys. v. Viningre*, 140 Ohio App. 3d 780, 795, 749 N.E.2d 344, 356 (2000).



**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

Here, the Website's primary purpose is as a solicitation for ChoicePoint's rehabilitation services: it provides information regarding ChoicePoint's treatment options, contact information, and a new patient scheduling form. *See* A.C. ¶ 9 ("ChoicePoint's website...allows potential clients to research its programs, request an appointment, and complete an online assessment of the severity of their addiction."). Where a website operates as marketing for a company's services, it qualifies as a solicitation—and therefore a consumer transaction—under the OSCPA. *See, e.g., State ex rel. Dewine v. Classmates, Inc.*, No. 15CV004418, 2015 Ohio Misc. LEXIS 14991, at *14 (Ct. Com. Pl. June 5, 2015) (misleading privacy statements on marketing website constituted violations of OSCPA). Therefore, Plaintiffs adequately allege that their interactions with the Website constitute consumer transactions with ChoicePoint.

The cases cited by ChoicePoint do not compel a different result. In *Ferron v. Zoomego*, the court did not rule that e-mail solicitations could not be considered consumer transactions under the OCSPA but rather, ruled that it could not determine whether the emails were solicitations because the plaintiff had failed to allege their factual content. 276 F. App'x 473, 476 (6th Cir. 2008). And *Smith v. Smith & Nephew, Inc*. 5 F. Supp. 3d 930, 932 (W.D. Ohio Mar. 10, 2014) is simply not relevant to this action because, while Medical devices may be exempt from the OCSPA, transactions between a medical service provider and patient are not, as noted *supra*.

<u>Second</u>, Plaintiffs properly allege deceptive acts and material misrepresentations in connection with their use of the Website. As detailed, *supra*, Plaintiffs allege that ChoicePoint represented that it does not "sell, trade, or give away your personal information to anyone" when in reality, it was sharing Plaintiffs' Sensitive Information with third-party advertisers.

***ii. Indiana Deceptive Consumer Sales Act ("IDCSA")***



**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

To maintain a claim under the IDCSA, Plaintiffs must allege that ChoicePoint committed an unfair, abusive or deceptive act, omission, or practice in connection with a consumer transaction. Ind. Code Ann. § 24-5-0.5-3.

First, ChoicePoint argues that Plaintiffs' IDCSA claim must fail because Plaintiffs have "failed to specifically identify any 'false promise' made to Plaintiffs[.]" Mot. at 25:11-12. As with Plaintiffs' OCSPA claim, Plaintiffs allege that ChoicePoint made the specific false promise on its Website that it does not "sell, trade, or give away your personal information to anyone" despite tracking and disclosing Plaintiffs' Sensitive Information to third parties, including Google and Facebook. A.C. ¶¶ 82-83, 248. Indiana courts have found that identical allegations state a claim under the IDCSA. *See Doe v. Med. Scanning Consultants P.A.*, 2024 Ind. Super. LEXIS 6, *20 (Ind. Super. Ct. April 8, 2024) (IDCSA claim sufficiently pled where plaintiff alleged that she provided information on defendant's website without knowing it was being transmitted to third parties, and defendant represented it would not transmit that information without her permission); *Lamarr v. Goshen Health* Sys., Inc., 2024 Ind. Super. LEXIS 107, *26 (Ind. Super. Ct. Oct. 3, 2024) (same).

Second, ChoicePoint is incorrect that the IDCSA requires a purchase. *See State v. TikTok Inc.,* 245 N.E.3d 681, 693 (Ind. Ct. App. 2024) (holding that free social media website could be liable to its users for violations of the IDCSA because the definition of "consumer transaction" does not include the words "exchange for money"). As Plaintiffs allege, the Website operates primarily to market ChoicePoint's addiction services. A.C. ¶ 9. Under the IDCSA, a solicitation of any service qualifies as a "consumer transaction." Ind. Code Ann. § 24-5-0.5-2(a)(1).

***iii. Washington Consumer Protection Act ("WCPA")***



**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

To maintain a claim under the WCPA, Plaintiffs must allege that ChoicePoint committed an unfair or deceptive act or practice in the conduct of any trade or commerce. Wash. Rev. Code Ann. § 19.86.020.

First, Plaintiffs properly allege an "unfair or defective act or practice" to support their WCPA claim. The WCPA "mandates that it be liberally construed to serve its purposes." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 27, 40, 204 P.3d 885, 891 (2009). To demonstrate an unfair or deceptive act or practice, a plaintiff "need not show that the act in question was *intended* to deceive, but that the alleged act had the *capacity* to deceive a substantial portion of the public." *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 785 (1986). Courts have found that where a defendant fails to uphold promises made in an online Privacy Policy, it has violated the WCPA. *Huong Hoang v. Amazon.com, Inc.,* No. C11-1709MJP, 2012 U.S. Dist. LEXIS 45498, at *14 (W.D. Wash. Mar. 28, 2012). A defendant's "failure to secure [plaintiff's] PII sufficiently identifies an unfair act that satisfies this element of the CPA" as well. *Guy*, 2023 U.S. Dist. LEXIS 125332, at *23. Here, as with Plaintiffs' OSCPA and IDCSA claims, Plaintiffs allege that ChoicePoint falsely represented that it does not "sell, trade, or give away your personal information to anyone[,]" despite tracking and disclosing their Sensitive Information to third parties, including Google and Facebook. A.C. ¶¶ 82-83, 252. These allegations are sufficient to establish a claim under the WCPA. *See Huong Hoang*, 2012 U.S. Dist. LEXIS 45498, at *14.

Second, Plaintiffs clearly allege damages. Under the WCPA, "allegations of the lost value of the PII are sufficient to show an injury, because 'the injury requirement is met upon proof the plaintiff's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.'" *Guy*, 2023 U.S. Dist. LEXIS 125332, at *23-24 (quoting *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 57 (2009)). Where a plaintiff alleges diminished value of her personal information, she does not need to "allege [she]



**BRESKIN | JOHNSON | TOWNSEND PLLC**
600 Stewart St., Suite 901
Seattle, WA 98101 Tel: 206-652-8660

is a participant in the market for private information in order to show injury." *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1097 (W.D. Wash. 2024) (quoting *Id.*, at *23). Here, Plaintiffs reference multiple sources, including the Washington Post and Facebook itself, that ascribe significant monetary value to user data like that collected by the Tracking Tools. A.C. ¶¶ 94-99. These allegations are sufficient to establish the diminution of value of Plaintiffs' personal information. *Guy*, 2023 U.S. Dist. LEXIS 125332, at *23-24.

## V. CONCLUSION

For the aforementioned reasons, this Honorable Court should **DENY** Defendant ChoicePoint's Motion to Dismiss.[8]

DATED: July 1, 2025.

Respectfully submitted,

BRESKIN JOHNSON TOWNSEND, PLLC

By: *s Brendan W. Donckers*
Brendan W. Donckers, WSBA #39406
Cynthia J Heidelberg, WSBA #44121
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel: (206) 652-8660
bdonckers@bjtlegal.com
cheidelberg@bjtlegal.com

Tyler J. Bean*
Sonjay C. Singh*
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: tbean@sirillp.com
E: ssingh@sirillp.com

*admitted *pro hac vice*

[8] Plaintiffs do not dispute ChoicePoint's arguments as to their claims for Breach of Confidence and violations of the Washington privacy Act.